In re ESTATE OF Charles
F. CELLA, Deceased.

Appeal of Audrey C. Locke, Appellant.

Superior Court of Pennsylvania.

Submitted April 27, 2010.
Filed Aug. 10, 2010.
Reargument Denied Oct. 8, 2010.

John N. Datesh, Jr., Pittsburgh, for appellant.

Robert J. Colaizzi, Pittsburgh, for appellee.

BEFORE: GANTMAN, PANELLA, and ALLEN, JJ.

OPINION BY GANTMAN, J.:

Appellant, Audrey C. Locke, appeals from the order entered in the Allegheny

County Court of Common Pleas, Orphans' court, which directed the funds in three (3) joint bank accounts to be included in the estate of Charles F. Cella ("Decedent") and distributed in accordance with his last will and testament. Appellant asks us to determine whether she is the owner of the subject accounts by means of her statutory right of survivorship pursuant to the Multiple Party Account Act at 20 Pa.C.S.A. §§ 6301–6306 ("MPAA"). For the following reasons, we hold the record does not support the court's decision to override the MPAA, where Appellee, Reba Cella–Renk, failed to prove by clear and convincing evidence that Decedent had an intent contrary to Appellant's right of survivorship when he created the joint accounts. Accordingly, we reverse and remand this case to the Orphans' court for treatment of the accounts at issue consistent with this opinion.

The relevant facts and procedural history of this case are as follows. Between 1997 and 2003, Decedent opened these joint bank accounts: Parkvale Savings Bank account No. * * * * *426 ("PK–426") (opened February 28, 1997); National City Bank of Pennsylvania account No. * * * * * *643 ("NC–643") (opened October 10, 2002); and National City Bank of Pennsylvania account No. * * * * * *642 ("NC–642") (opened May 22, 2003). Upon opening the accounts, both Decedent and Appellant[1] signed account cards expressly designating each of the accounts as joint with the right of survivorship ("JWROS"). Stipulations in this case include that Decedent solely funded the accounts, the accounts were opened as joint accounts with Appellant, and Decedent did not intend an *inter vivos* gift of the money in the accounts to Appellant.

On January 7, 2005, Decedent executed his last will and testament and a durable power of attorney. Under the express terms and conditions of his will, Decedent devised all of his real and personal property to his three (3) grandchildren, and named Appellee[2] as executrix. The will did not reference the bank accounts. Decedent's durable power of attorney named Appellant as attorney-in-fact. Between January 7, 2005 and March 23, 2005, Appellant withdrew approximately $22,000.00 from PK–426, $16,688.83 from NC–642, and $7,000.00 from NC–643. Decedent died in the afternoon of March 23, 2005.

On April 14, 2005, the Register of Wills issued letters testamentary. On July 27, 2007, Appellee filed a petition for citation, requesting Appellant to produce an accounting of the funds from the three bank accounts at issue. On September 14, 2007, the court ordered Appellant to show cause why she should not provide a full and final accounting of any and all accounts and assets titled in Decedent's name that existed at the time of Decedent's death and/or one year prior to his death.

On March 12, 2008, the Orphans' court held a hearing on the petition. On June 19, 2008, the court ordered the funds in the three accounts to pass to Decedent's estate to be distributed in accordance with Decedent's will. The court found Decedent had created the accounts solely as a matter of convenience; consequently, Appellant was not the owner of the accounts upon Decedent's death and had no right of survivorship in the bank accounts as against Decedent's estate. On July 8, 2008, Appellant timely filed exceptions, which the court denied on August 6, 2008. Appellant timely filed a notice of appeal on September 3, 2008. On September 10, 2008, the court ordered Appellant to file a

---

1. Appellant was Decedent's sister.

2. Appellee was Decedent's daughter.

concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on September 24, 2008. By order entered December 11, 2008, the court expressly deemed as final its August 6, 2008 order.

Appellant raises the following issues for our review:

> DID THE ORPHANS' COURT ERR IN INTERPRETING AND APPLYING THE MPAA SURVIVORSHIP PROVISION [AND] RULING THAT THE ACCOUNTS FOUND TO HAVE BEEN OPENED FOR [DECEDENT'S] CONVENIENCE DID NOT THEREFORE HAVE ANY SURVIVORSHIP INTEREST?
>
> DID THE COURT ERR IN ARBITRARILY AND CAPRICIOUS[LY] DISREGARDING SUBSTANTIAL HISTORICAL DOCUMENTARY EVIDENCE OF [DECEDENT'S] INTENT UNDER THE MPAA'S SURVIVORSHIP PROVISION IN REACHING [THE] FACTUAL [CONCLUSION] THAT [DECEDENT] DID NOT INTEND APPELLANT ... TO HAVE SURVIVORSHIP INTERESTS IN THE DISPUTED ACCOUNTS?
>
> DID THE COURT ERR IN ARBITRARILY AND CAPRICIOUSLY RELYING ON CONFUSED AND CONTRADICTORY TESTIMONIAL EVIDENCE OF [DECEDENT'S] INTENT UNDER THE MPAA SURVIVORSHIP PROVISION IN REACHING [THE] FACTUAL [CONCLUSION] THAT [DECEDENT] DID NOT INTEND APPELLANT ... TO HAVE SURVIVORSHIP INTERESTS IN THE DISPUTED ACCOUNTS?

(Appellant's Brief at 2–3).

 As a prefatory matter, we observe: "The appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Estate of Considine v. Wachovia Bank,* 966 A.2d 1148, 1151 (Pa.Super.2009). "[T]his Court has the power to inquire at any time, *sua sponte,* whether an order is appealable." *Id.; Stanton v. Lackawanna Energy, Ltd.,* 915 A.2d 668, 673 (Pa.Super.2007). Pennsylvania law makes clear:

> [A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa. C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*Stahl v. Redcay,* 897 A.2d 478, 485 (Pa.Super.2006), *appeal denied,* 591 Pa. 704, 918 A.2d 747 (2007) (quoting *Pace v. Thomas Jefferson University Hosp.,* 717 A.2d 539, 540 (Pa.Super.1998) (internal citations omitted)). Pennsylvania Rule of Appellate Procedure 341 defines "final orders" and states:

> **Rule 341. Final Orders; Generally**
>
> **(a) General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.
>
> **(b) Definition of final order.** A final order is any order that:
>
> (1) disposes of all claims and of all parties; or
>
> (2) is expressly defined as a final order by statute; or
>
> (3) is entered as a final order pursuant to subdivision (c) of this rule.
>
> **(c) Determination of finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim ... the trial court ... may enter a final order as to one or more but fewer than all of the claims ... only upon an express determination that an immedi-

ate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order ... that adjudicates fewer than all the claims ... shall not constitute a final order. ... Pa.R.A.P. 341(a)–(c). Under Rule 341, a final order can be one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination under Rule 341(c). Pa.R.A.P. 341(b)(1)–(3); *In re N.B.*, 817 A.2d 530, 533 (Pa.Super.2003).

Pennsylvania Rule of Appellate Procedure 342 provides:

**Rule 342. Orphans' Court Orders Appealable. Orders Determining Realty, Personalty and Status of Individuals or Entities. Orders Making Distribution**

An order of the Orphans' Court Division **making a distribution, or determining an interest in realty or personalty** or the status of individuals or entities, **shall be immediately appealable:**

(1) upon a determination of finality by the Orphans' Court Division, **or**

(2) as otherwise provided by Chapter 3 of these rules.

Pa.R.A.P. 342 (emphasis added). In 2005, the legislature amended Rule 342 to clarify the procedure set forth in subsection (1) is not the exclusive method of appealing interlocutory orders in estate cases. Pa. R.A.P. 342, *Note.* A party may also take an appeal from an interlocutory order under subsection (2). Pa.R.A.P. 342(2).[3]

The instant case involves an appeal from the Orphans' court order declaring the three joint bank accounts as part of Dece-

dent's estate, to be distributed according to his will. By order entered June 19, 2008, the court directed Appellant to turn over the accounts to Decedent's estate. Appellant filed exceptions to the order, which the court denied on August 6, 2008. By order entered December 11, 2008, the court expressly deemed as final its August 6, 2008 order. *See* Pa.R.A.P. 341(b)(1); 342(1). Thus, we have no jurisdictional impediments and will review the merits of Appellant's claims.

When reviewing an order from the Orphans' court:

[O]ur standard is narrow: we will not reverse unless there is a clear error of law or an abuse of discretion. Our scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record.

*In re Estate of Westin,* 874 A.2d 139, 142 (Pa.Super.2005) (internal citations omitted). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be ... manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Silver v. Pinskey,* 981 A.2d 284, 291 (Pa.Super.2009) (en banc) (quoting *Mencer v. Ruch,* 928 A.2d 294, 297 (Pa.Super.2007)).

For purposes of disposition, we combine Appellant's issues. Appellant argues she is the true owner of the joint accounts because each of the accounts at issue was expressly designated JWROS. In support of her position, Appellant at first directs our attention to evidence of Decedent's banking and financial plan-

---

**3.** Rule 342 as amended supersedes *In re Estate of Sorber,* 803 A.2d 767 (Pa.Super.2002) (quashing appeal because 2001 version of

Rule 342 precluded interlocutory appeals in estate cases if Orphans' court did not make determination of finality).

ning history that shows Decedent knew the legal effect of creating a JWROS account. Appellant maintains Decedent had, in the past, given her and Appellee limited "signatory authority" on other accounts. Appellant asserts this evidence indicates Decedent's intent was to create these particular accounts as JWROS, which defeats Appellee's position that Decedent opened the accounts solely for his convenient use. Appellant further observes there was no evidence of record that Decedent ever actually used the accounts as a "convenience." Instead, Appellant asserts the evidence unequivocally demonstrates Decedent intended the character of the accounts as beneficiary. Appellant insists Appellee failed to rebut by clear and convincing evidence the MPAA presumption of survivorship/ownership. Appellant concludes she became the owner of the joint accounts upon Decedent's death, and the funds in the joint accounts passed to her outside the estate pursuant to her right of survivorship; and this Court must reverse the decision of the Orphans' court. For the following reasons, we agree.

■ In Pennsylvania, the ownership of funds held in a multi-party account is governed by statute. *In re Estate of Dembiec*, 321 Pa.Super. 515, 468 A.2d 1107, 1110 (1983). The MPAA defines a multiple-party account as "either a joint account or a trust account." 20 Pa.C.S.A. § 6301. The MPAA, in turn, defines a joint account as, "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." *Id.* Section 6303(a) provides: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." 20 Pa.C.S.A. § 6303(a). The theory behind the statute is that of ownership of the accounts attributable to the individual's respective deposits and withdrawals; "the right of survivorship which attaches **unless negated by the form of the account** really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy." *In re Novosielski*, 605 Pa. 508, 534, 992 A.2d 89, 105 (2010) (emphasis in original).

> One who knowledgeably creates a joint account with another arguably does so with the present intent to employ the account's survivorship characteristic in substitution for a testamentary device. Furthermore, accounts with right of survivorship provisions are often set up to allow caretakers to assist senior citizens with the management of their finances. Their well-planned financial protection can best be honored by adhering to the statutory presumption[s]. . . . Like other testamentary devices, creation of a joint account, without more, accomplishes no present transfer of title to property. If . . . one person deposits all sums in the joint account, this arrangement contemplates transfer of title to those funds to the other person or persons named on the account upon the death of the depositor. Moreover, the creator of a joint account, like the maker of a will and unlike the giver of a gift, may change his or her mind prior to death.

*Id.* at 530, 992 A.2d at 102 (quoting *Deutsch, Larrimore & Farnish, P.C. v. Johnson*, 577 Pa. 637, 648, 848 A.2d 137, 143–44 (2004)).

■ Section 6304 of the MPAA addresses the right of survivorship in a joint account, and provides in pertinent part:

### § 6304. Right of Survivorship

(a) **Joint Account.**—Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent **unless there is clear and convincing evidence of a different intent at the time the account is created.** . . .

\* \* \*

(d) **Change by will prohibited.**—A right of survivorship arising from the express terms of an account or under this section, or a beneficiary designation in a trust account **cannot be changed by will.**

20 Pa.C.S.A. § 6304 (emphasis added).

The underlying assumption is that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death. As to the ownership of funds held in a joint account, **the statute favors the surviving party over the estate of the decedent.** By [enacting] 20 Pa.C.S.A. § 6304, the legislature has created a statutory presumption that survivorship rights are intended when a joint account is created. This presumption can be overcome only by clear and convincing evidence of contrary intent. **The burden of establishing a contrary intent is on the party who opposes the presumption of survivorship.**

*In re Estate of Meyers,* 434 Pa.Super. 165, 642 A.2d 525, 528 (1994) (internal citations omitted) (emphasis added). The clear and convincing evidence standard is the highest standard of proof for civil claims. *Manning v. WPXI, Inc.,* 886 A.2d 1137, 1144 (Pa.Super.2005), *appeal denied,* 589 Pa. 731, 909 A.2d 305 (2006). "This standard requires evidence so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue." *Id.*

 Recently, the Supreme Court clarified certain concepts concerning the nature of joint accounts and the statutory presumption of survivorship generally, as well as the necessary quantum of proof to overcome that presumption and what effect if any the creation of a will has on that presumption. *In re Novosielski, supra.* First, the Court reiterated that joint accounts with rights of survivorship are typically created as "convenience" accounts; as such, a legitimately created joint account carries the statutory presumption of survivorship unless negated by the form of the account. *Id.* at 535, 992 A.2d at 105. The purpose of the presumption is to provide financial institutions with "the certainty and regularity required for the general course of human commerce" and to avoid "the protracted resolution of family disputes," as illustrated by the present conflict. *Id.* at 537, 992 A.2d at 106–07. Thus, the opponent of the survivorship right has the burden to produce evidence "so clear, direct, weighty, and convincing that the fact finder could without hesitation, come to a clear conviction that Decedent, in fact, had not intended" a right of survivorship regardless of how the accounts were created. *Id.* at 538, 992 A.2d at 107. The proponent of the survivorship right, on the other hand, is not required to come forward with additional evidence of the decedent's intent at the time the account was created. *Id.* at 535, 992 A.2d at 106.

 "Absent a finding based on clear and convincing evidence that the [accounts were] fraudulently created or accomplished through a breach of trust" the court must apply the MPAA to resolve the dispute. *Id.* at 538, 992 A.2d at 107. "[E]xcept when the instrument explicitly provides to the contrary or in the unusual case of heightened degree of evidence, in-

dividuals and institutions may safely rely upon the presumed right of survivorship of MPAA joint accounts." *Id.* at 529, 992 A.2d at 102.

■ Moreover, the creation of a will does not defeat the survivorship right created by joint accounts merely because the will would distribute a decedent's property in a conflicting manner. *Id.* at 527, 992 A.2d at 101. "The legislature did not intend that the MPAA be read to conform to the provisions in the PEF [Probate, Estate, and Fiduciaries] Code governing wills." *Id.* at 529, 992 A.2d at 102.

■ Instantly, the Orphans' court decided Appellee had rebutted the statutory presumption of survivorship as follows:

\* \* \*

9. It appears to this [c]ourt that [Decedent] treated the monies in the three [ (3) ] disputed accounts as his own during his lifetime.

10. It appears to this [c]ourt that [Appellant] was simply the person who signed checks from the three [ (3) ] disputed accounts.

11. It appears to this [c]ourt that [Appellant] exercised no dominion or control over the funds which were deposited exclusively by [Decedent] prior to his death.

12. This [c]ourt is convinced that the three [ (3) ] disputed accounts were created jointly as a matter of convenience to [Decedent].

13. This [c]ourt finds that [Decedent] did not impart the right of survivorship to [Appellant].

14. This [c]ourt finds that [Appellee] has produced sufficient evidence to rebut the statutory presumption that the funds remaining in the three [ (3) ] disputed accounts, at the time of the death of [Decedent,] belonged to [Appellant]

by means of survivorship pursuant to 20 Pa.C.S.A. § 6304(a).

\* \* \*

(Orphans' Court Order, filed June 19, 2008, at 2). After a thorough review of the record and the relevant law, we respectfully disagree that these findings were sufficient to support the court's decision.

At the March 12, 2008 hearing, the parties stipulated Decedent had opened the joint accounts expressly as JWROS accounts with Appellant. (*See* N.T. Hearing, 3/12/08, at 5.) Decedent and Appellant signed account cards each time, expressly designating the respective account as JWROS. *See* 20 Pa.C.S.A. § 6301. By the manner in which Decedent titled the joint accounts as JWROS, he created a right of survivorship in Appellant. Pursuant to the MPAA survivorship presumption, and in the absence of any evidence of fraud or undue influence involved in the titling of the accounts, the accounts belonged to Appellant when Decedent died. *See* 20 Pa.C.S.A. § 6304(a); *In re Novosielski, supra.*

Consequently, Appellee had to present clear and convincing evidence to rebut the survivorship presumption and prove Decedent, in fact, had not intended a right of survivorship regardless of how the accounts were created. *See id.* Although Decedent solely funded the disputed accounts, treated the monies in those accounts as his own during his lifetime, and Appellant did not exercise dominion or control over those accounts, Decedent's acts were wholly consistent with the statutory presumption that funds in a joint account belong to the depositor during his lifetime. *See* 20 Pa.C.S.A. § 6303(a); *In re Novosielski, supra; Deutsch, Larrimore & Farnish, P.C., supra.* There was absolutely no evidence that Decedent changed his mind regarding the nature of the joint accounts at any time before he

died or tried to liquidate the accounts and his efforts were somehow thwarted.

Moreover, joint accounts are typically created as "convenience accounts"; such arrangements are also consistent with the statutory presumption of survivorship. *See In re Novosielski, supra; Deutsch, Larrimore & Farnish, P.C., supra.* Regardless of whether the subject accounts were "convenience" accounts, legitimately created joint accounts still carry the statutory presumption of survivorship, unless negated by the form of the account.

As the opponent of the survivorship right, Appellee had the burden to produce evidence so clear, direct, weighty, and convincing that the fact finder could without hesitation, come to a clear conviction that Decedent, in fact, had not intended a right of survivorship in Appellant, regardless of how the accounts were created. *See In re Novosielski, supra.* Without a finding based on clear and convincing evidence that the joint accounts were fraudulently created/maintained or titled through a breach of trust, the Orphans' court should have applied the MPAA to resolve this dispute and found in favor of Appellant. *See id.*

Likewise, the fact that Decedent drafted his will naming his grandchildren as beneficiaries of his estate, after he had opened the joint accounts, is not clear and convincing evidence Decedent also intended the funds in the joint accounts to pass as part of his probate estate. *See* 20 Pa.C.S.A. § 6304(d); *In re Novosielski, supra.* At the hearing, Appellee and Decedent's family members admitted Decedent had not discussed with any of them his specific

intentions regarding the joint accounts. Rather, Appellee and Decedent's family members articulated only a general knowledge that Decedent wanted to benefit his grandchildren upon his death. While the testimony adduced at the hearing indicated generally Decedent's objective to provide for his grandchildren, Appellee failed to produce testimony/evidence regarding the manner or the specific property he wished to leave his grandchildren upon his death.[4] Appellee's description of Decedent's general goal is not so clear, direct, weighty, and convincing to prove Decedent wanted the joint accounts to pass through his estate. Rather, the testimony adduced at the hearing shows just a general sense or "common knowledge" among family members of Decedent's basic aim to benefit his grandchildren. (*See N.T.,* 3/12/08, at 20, 89–90, 101–02, 115, 145.) Importantly, Appellee and various other family members conceded that Decedent had not discussed his banking, financial plans, and/or testamentary devises with them before he died.[5] (*See id.* at 49–50, 89–90, 101, 104, 113, 131.) Therefore, Appellee's evidence did not meet the heightened degree necessary to rebut the statutory presumption of Appellant's survivorship rights to the joint accounts, which on their face reflected Decedent's intent that Appellant should own the accounts upon Decedent's death. *See In re Novosielski, supra.* Thus, we hold the Orphans' court erred in its interpretation of the MPAA and improperly applied its provisions, given the lack of clear and convincing record evidence of an intent contrary to Appellant's statutory right of survivorship. Accordingly, we reverse and

---

4. In addition to designating his grandchildren as the residuary beneficiaries under his will, Decedent also named his grandchildren as the sole beneficiaries of his IRA accounts, which indicates Decedent knew what he had and what he wished to leave to his grandchildren.

5. Appellee did produce evidence of Decedent's specific intent regarding his IRA accounts; Appellee testified: "[Decedent] had given me a sealed envelope and said, 'If anything happens to me, this is for the girls.'" (*See id.* at 147.)

remand this case to the Orphans' court for treatment of the accounts at issue consistent with this opinion.

Order reversed; case remanded with instructions. Jurisdiction is relinquished.