J-S58033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ESTATE OF VICTOR            :        IN THE SUPERIOR COURT OF
SANGIULIANO                        :             PENNSYLVANIA
                                   :
                                   :
APPEAL OF: DEBRA A. SLACK          :        No. 2182 MDA 2015

Appeal from the Order Entered November 12, 2015
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): 2015-00411

BEFORE:  GANTMAN, P.J., BOWES, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED AUGUST 23, 2016**

Appellant, Debra A. Slack, appeals *pro se* from the order entered in the Lackawanna County Court of Common Pleas, Orphans' Court, which, *inter alia*, directed Appellant to vacate real property formerly owned by Victor Sangiuliano ("Decedent"); and directed Theresa M. Sowka (Decedent's daughter and the administratrix of Decedent's estate) to list for sale immediately the real property located at 536 N. Bromley Avenue in Scranton, PA ("Property").  We quash the appeal.

The relevant facts and procedural history of this case are as follows. On March 24, 2015, Decedent died intestate.  The Register of Wills subsequently granted letters of administration to Mrs. Sowka.  At the time of Decedent's death, Appellant resided with Decedent in the Property. Following Decedent's death, Mrs. Sowka asked Appellant to vacate the Property so Mrs. Sowka could perform her duties as administratrix of

_____

*Retired Senior Judge assigned to the Superior Court.

Decedent's estate. Appellant refused to vacate the Property, claiming she was Decedent's common-law wife and entitled to reside in the Property as an heir to Decedent's estate. Consequently, Mrs. Sowka commenced eviction proceedings on May 15, 2015. On May 27, 2015, a district judge awarded Mrs. Sowka possession of the Property. Appellant timely filed an appeal in the Court of Common Pleas on June 3, 2015.

On June 16, 2015, Mrs. Sowka filed a complaint for possession of the Property. Mrs. Sowka alleged Appellant refused to leave the Property based on her claim that she is Decedent's common-law wife; and Mrs. Sowka requires possession of the Property to protect the rights of Decedent's estate and those of lienholders on the Property. Mrs. Sowka asked the court, *inter alia*, to direct Mrs. Sowka to take possession of the Property and to sell the Property; and require Appellant to pay fair market rent from the date of Decedent's death until she vacates the Property. Appellant filed an answer on July 14, 2015, claiming she was Appellant's common-law wife for fifteen years and was therefore entitled to remain in the Property as a rightful heir. On July 20, 2015, Mrs. Sowka filed an emergency motion to transfer the case to the Orphans' Court, which the trial court granted on August 18, 2015.

On August 20, 2015, Mrs. Sowka filed an emergency motion for possession of the Property. Mrs. Sowka alleged, *inter alia*, she is the sole surviving heir to Decedent's estate; Appellant (Decedent's "acquaintance") is

residing in Decedent's home and refusing to vacate the Property; and Mrs. Sowka requires immediate possession of the Property to protect Decedent's estate, prevent foreclosure of the Property, and settle estate-related debts. Appellant filed an answer to the emergency motion on August 28, 2015, challenging Mrs. Sowka's claim that she is the sole surviving heir of Decedent's estate. The court scheduled a hearing on the motion and directed Appellant to pay rent to the judicial clerk.

On November 12, 2015, the court conducted a hearing on the emergency motion. At the beginning of the hearing, Mrs. Sowka's counsel asked the court to decide only whether Mrs. Sowka was entitled to possession of the Property so that she could perform her duties as administratrix and protect the estate. Mrs. Sowka's counsel insisted the court defer ruling on Appellant's common-law marriage claim until distribution of the estate. Appellant's counsel maintained that Appellant's status as Decedent's common-law wife was relevant to Appellant's entitlement to stay in the Property. Following this discussion, the court declined to limit the scope of the hearing and permitted Mrs. Sowka and Appellant to call their respective witnesses. (*See* N.T. Hearing, 11/12/15, at 4-5; R.R. at 19-20.)

Mrs. Sowka presented three witnesses: Attorney Stephen Bresset, herself, and her husband. Attorney Bresset testified that his law firm represents Valor Credit Union, which has a mortgage interest in the

Property.  Attorney Bresset indicated no payments were made on the mortgage since February 2015, and the Property was in danger of mortgage foreclosure.  (*Id.* at 5-12; R.R. at 20-27).

Mrs. Sowka testified that she is the sole heir to Decedent's estate and she was appointed administratrix of Decedent's estate.[1]  Mrs. Sowka explained Appellant refused to vacate the Property after Decedent's death, forcing Mrs. Sowka to initiate eviction proceedings.  Mrs. Sowka indicated the Property is in danger of foreclosure because Decedent's estate lacks sufficient assets to make monthly mortgage payments.  Mrs. Sowka discussed outstanding utility bills, credit card bills, and other potential liens against the estate.  Mrs. Sowka said she had the Property appraised and the appraisal report showed the Property is worth $75,000.00.  Mrs. Sowka claimed selling the Property is necessary to pay off the estate's debts.  Mrs. Sowka admitted Appellant had lived with Decedent prior to his death but insisted Appellant was Decedent's girlfriend, not his common-law wife.  Mrs. Sowka testified that Appellant and Decedent did not hold any joint back accounts and Appellant's name is not on the mortgage to the Property.  The court observed for the record that the deed to the Property is in Decedent's name only.  Mrs. Sowka claimed she did not hear Decedent refer to Appellant as his wife, and she did not recall Decedent and Appellant exchanging wedding rings.  (*Id.* at 12-30; R.R. at 27-45).

---

[1] The parties stipulated that Mrs. Sowka is the administratrix of Decedent's estate.

Steven Sowka, Mrs. Sowka's husband, also testified that the Property was in disarray since Decedent's death. Mr. Sowka said the ceiling had fallen down and a radiator was leaking. Mr. Sowka suggested Appellant removed some of Decedent's personal belongings from the Property. Mr. Sowka claimed Appellant refused to let Mrs. Sowka sell Decedent's vehicles. (*Id.* at 30-38; R.R. at 45-53).

Appellant presented five witnesses in her defense: Cody Slack (Appellant's son), James Horvath, Janet Fabri, Judith Jaget, and herself. Mr. Slack testified that Decedent was Appellant's significant other. Mr. Slack said he lived with Decedent and Appellant in the Property for approximately ten years beginning around 2000 or 2001. Mr. Slack maintained Decedent treated him like a son. Mr. Slack recalled Appellant and Decedent exchanging wedding vows on Christmas Eve around 2000. Mr. Slack said Appellant and Decedent gave each other wedding rings by the Christmas tree. Mr. Slack claimed Appellant and Decedent wore the wedding rings. (*Id.* at 38-45; R.R. at 53-60).

Mr. Horvath testified that he knows Appellant through Decedent and has known Decedent for over fifty years. Mr. Horvath recalled Decedent and Appellant referring to one another as husband and wife. Mr. Horvath claimed Appellant and Decedent were always together. (*Id.* at 45-50; R.R. at 60-65).

Ms. Fabri testified that she is the best friend of Appellant's mother and

has known Decedent for about fifteen or sixteen years. Ms. Fabri recalled Appellant showing her a ring that looked like a wedding band. (*Id.* at 50-53; R.R. at 65-68).

Ms. Jaget testified that Appellant and Decedent lived together for many years and took care of each other. Ms. Jaget insisted Appellant took care of Decedent when he was ill, in the way that a wife cares for her husband. Ms. Jaget contended Appellant and Decedent wore wedding bands. On cross-examination, Ms. Jaget admitted Appellant did not live with Decedent continuously from 2001-2005 when they were having relationship difficulties. (*Id.* at 53-57; R.R. at 68-72).

Appellant testified that she and her son moved into the Property in 1999. Appellant alleged she exchanged marriage vows with Decedent on Christmas Eve in 2002. Appellant claimed she and Decedent promised to be there for one another in sickness and health and until death parted them. Appellant maintained she exchanged rings with Decedent and brought in pictures of Appellant wearing her purported wedding ring. At this point, Mrs. Sowka objected. Appellant contended pictures of the rings exchanged were relevant to Appellant's claim of common-law marriage. The court overruled the objection and let Appellant admit the pictures into evidence. The court also permitted Appellant to testify over Mrs. Sowka's objection that Decedent introduced her as his wife.

During Appellant's testimony, Mrs. Sowka's counsel suggested

Appellant's testimony was beyond the scope of the hearing. Mrs. Sowka's counsel maintained the purpose of the hearing was strictly to determine whether Mrs. Sowka could take possession of the Property to sell it and pay off the mortgage. Mrs. Sowka's counsel insisted, once again, that the court should defer Appellant's common-law marriage claim until distribution of the estate. The court agreed Appellant might be "putting the cart before the horse," but it permitted Appellant to continue with her testimony. The court also noted Appellant could renew her common-law marriage claim at the time of distribution. Appellant then testified about Decedent's various ailments, and how she cared for Decedent during their relationship. Appellant said Decedent opened a store credit card in 2012, and named Appellant on the application as an authorized user as his "wife."[2]

On cross-examination, Appellant admitted she did not share any joint back accounts with Decedent and was not named on the mortgage to the Property. Mrs. Sowka's counsel also introduced various legal documents showing Appellant listed her residence as addresses other than the Property during the timeframe she had alleged she cohabitated with Decedent and was his common-law wife. Mrs. Sowka's counsel further presented court papers Appellant had completed, suggesting she was married to a man other

---

[2] This event occurred after Pennsylvania had abolished common-law marriage in 2005. *See* 23 Pa.C.S.A. § 1103 (stating: "No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid").

than Decedent in 2001. Appellant also admitted she lived somewhere other than the Property from approximately 2004-2007. Although Mrs. Sowka's counsel presented evidence showing Appellant used three different addresses (one at the Property) between 2001 and 2007, Appellant maintained she did not relinquish her address at the Property during that timeframe. (*Id.* at 57-86; R.R. at 72-101).

At the conclusion of Appellant's testimony, the court ruled in favor of Mrs. Sowka. The court ordered Appellant to vacate Decedent's home within 30 days; directed the clerk of judicial records to turn over all rent paid by Appellant to Decedent's estate for proper distribution; instructed Mrs. Sowka to list the Property for sale immediately; and prohibited Appellant from removing any of Decedent's personal belongings from the Property. The court declined to rule on Appellant's common-law marriage claim, informing Appellant she could raise that issue at the time of distribution of the estate. On Monday, December 14, 2015, Appellant filed a *pro se* notice of appeal. The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises the following issues on appeal:

> DID THE TRIAL COURT ABUSE ITS DISCRETION OR ERR AT LAW WHEN IT DIRECTED APPELLANT TO VACATE DECEDENT'S HOME ABSENT A FULL HEARING ON HER PROPERLY RAISED COMMON-LAW WIFE RIGHTS?
>
> SHOULD THIS MATTER BE REMANDED TO HOLD AN

EVIDENTIARY HEARING ON THE ISSUE OF WHETHER OR NOT APPELLANT HAS COMMON-LAW WIFE RIGHTS?

(Appellant's Brief at 4).

Preliminarily, "[t]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." *In re Estate of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa.Super. 2009). As a result, "this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." *Id.* "An appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313)." *In re Estate of Cella*, 12 A.3d 374, 377 (Pa.Super. 2010) (some internal citations omitted).

Pennsylvania Rule of Appellate Procedure 341 defines "final orders" and states:

**Rule 341.  Final Orders; Generally**

**(a) General rule.**  Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

**(b) Definition of final order.**  A final order is any order that:

(1)  disposes of all claims and of all parties; or

(2)  is expressly defined as a final order by statute; or

(3)  is entered as a final order pursuant to subdivision

- 9 -

> (c) of this rule.
>
> **(c)   Determination of finality.**  When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim [or when multiple parties are involved,] the trial court…may enter a final order as to one or more but fewer than all of the claims [and parties] only upon an express determination that an immediate appeal would facilitate resolution of the entire case.  Such an order becomes appealable when entered.  In the absence of such a determination and entry of a final order, any order…that adjudicates fewer than all the claims [and parties] shall not constitute a final order.  …

Pa.R.A.P. 341(a)-(c) (effective July 1, 2014).[3]  "Under Rule 341, a final order can be one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination under Rule 341(c)."  ***Estate of Cella, supra*** at 378.  "An order is not final and appealable merely because it decides one issue of importance to the parties.  Rather, for an order to be final and ripe for appeal, it must resolve all pending issues and constitute a complete disposition of all claims raised by all parties."  ***In re Estate of Stricker***, 602 Pa. 54, 60, 977 A.2d 1115, 1118 (2009).  As a general rule in an estate case, "the confirmation of the final account of the personal representative represents the final order, subject to exceptions being filed and disposed of by the court."  ***In re Estate of Habazin***, 679 A.2d 1293, 1295 (Pa.Super. 1996).  ***See also In re Estate of Quinn***, 805 A.2d 541 (Pa.Super. 2002)

---

[3] This version of Rule 341 was in effect when Appellant filed the notice of appeal in this case.  The current version of Rule 341 was amended December 14, 2015, effective April 1, 2016.

(explaining confirmation of final account of personal representative represents final order in estate case; where Orphans' Court has not yet confirmed final accounting and estate remains under administration, order approving settlement distribution of some funds included in estate is not final and appealable order).

Specific to the appealability of Orphans' Court orders, Pennsylvania Rule of Appellate Procedure 342 provides, in pertinent part:

**Rule 342.  Appealable Orphans' Court Orders**

**(a)   General rule.**   An appeal may be taken as of right from the following orders of the Orphans' Court Division:

(1)   An order confirming an account, or authorizing or directing a distribution from an estate or trust;

(2)   An order determining the validity of a will or trust;

(3)   An order interpreting a will or a document that forms the basis of a claim against an estate or trust;

(4)   An order interpreting, modifying, reforming or terminating a trust;

(5)   An order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship;

(6)   An order determining an interest in real or personal property;

(7)   An order issued after an inheritance tax appeal has been taken to the Orphans' Court pursuant to either 72 Pa.C.S. § 9186(a)(3) or 72 Pa.C.S.A. § 9188, or after the Orphans' Court has made a determination of the issue protested after the record has been removed

- 11 -

from the Department of Revenue pursuant to 72 Pa.C.S. § 9188(a); or

(8) An order otherwise appealable by Chapter 3 of these rules.

Pa.R.A.P. 342(a) (representing current, relevant version of rule, adopted December 29, 2011, effective February 12, 2012). Significantly, "[a]n appeal from an order directing the administrator of a decedent's estate to sell real estate belonging to the decedent is interlocutory and must be quashed." **Estate of Stricker, supra** at 59, 977 A.2d at 1118. **See also Estate of Habazin, supra** (explaining appeal from order directing administrator of decedent's estate to sell real estate belonging to decedent is interlocutory and must be quashed). Generally, absent a specific devise under a will, the delay in review of an order permitting an administrator to sell the decedent's property does not result in the loss of any right to an heir because the proceeds of the sale will remain under the review and control of the Orphans' Court until confirmation of the final account. **Estate of Stricker, supra** at 60, 977 A.2d at 1118. **See also Estate of Ash**, 73 A.3d 1287 (Pa.Super. 2013), *appeal denied*, 624 Pa. 679, 86 A.3d 231 (2014) (quashing appeal from order authorizing administratrix to sell real estate that belonged to decedent to accomplish eventual division of estate assets).

Instantly, Appellant filed her notice of appeal from the order which, *inter alia*, (a) directed Appellant to vacate Decedent's home within 30 days and (b) ordered Mrs. Sowka to list the Property for sale immediately.

Administration of the estate remains ongoing, and Mrs. Sowka has not issued a final account for the court's confirmation. Thus, the order appealed from is not a final order pursuant to Rule 341. *See* Pa.R.A.P. 341; ***Estate of Quinn, supra***; ***Estate of Habazin, supra***. Additionally, the order appealed from is not enumerated as an immediately appealable order under Rule 342(a). *See* Pa.R.A.P. 342(a). Notably, the court declined to rule on Appellant's common-law marriage claim at the conclusion of the hearing, deferring that issue until distribution of the estate.[4] Consequently, the order

---

[4] In its Rule 1925(a) opinion, the Orphans' Court states Appellant was unable to establish her claim of common-law marriage at the November 12, 2015 hearing. (***See*** Orphans' Court Opinion, filed March 1, 2016, at 2.) Nevertheless, the court's remarks on the record at the time of the hearing make clear the court declined to decide the common-law marriage issue, without prejudice to Appellant to prove her status as an heir at a later date. (***See*** N.T. Hearing at 65-66; R.R. at 80-81) (stating: "By the way, that doesn't preclude [Appellant] from [establishing her claim of common-law marriage] if she wants to try to establish something at a later date to get part of this, whatever the estate is, if she can prove that.") (***See also id.*** at 89; R.R. at 104) (stating: "[Appellant], please be out of the premises in 30 days, and if you want to seek counsel to try to establish common-law marriage that's another issue.") Moreover, we observe Appellant's assertion that she is entitled to remain in the Property if she proves her common-law marriage claim, even when sale of the Property is necessary to protect the rights of claimants or other parties, is simply a misunderstanding of the law. ***See*** 20 Pa.C.S.A. § 3311(a) (stating: "The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or other parties. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee"); ***In re Brose's Estate***, 423 Pa. 420, 223 A.2d 661 (1966) (explaining where personal representative is charged with responsibility of possessing and administering asset, individual cannot retain possession of asset of estate merely because individual is, or might be, entitled to subsequently share in distribution of estate).

appealed from did not determine Appellant's status as a potential beneficiary or decide what interest she might have in the Property as a potential heir. **See** Pa.R.A.P. 342(a)(5-6). **See also Estate of Ash, supra** (explaining Rule 342(a)(6) applies only where Orphans' Court enters order that resolves some dispute about who had or has interest in property; because there was no question that decedent's estate owned property at issue, subsection (a)(6) did not apply).

Further, Appellant makes no claim that the order at issue is appealable as of right under Pa.R.A.P. 311,[5] and Appellant did not secure permission to

_____

[5] **See** Pa.R.A.P. 311 (listing specific orders from which appeal may be taken as of right and without reference to Rule 341(c)). Rule 311(a)(2) states an appeal may be taken as of right from an order "confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property," subject to some exceptions. Pa.R.A.P. 311(a)(2). **See also Jerry Davis, Inc. v. Nufab Corp.**, 677 A.2d 1256, 1259 (Pa.Super. 1996) (holding order denying or granting issuance of writ of seizure in replevin action does not constitute order affecting possession or control of property as contemplated in Rule 311(a)(2); stating "attachments," "custodianships," and "receiverships" have technical and peculiar meanings when applied in legal context and refer to particular type of action or remedy; "replevin" is also distinct form of legal action and relief, which cannot be equated or used interchangeably with attachment, receivership, or custodianship; Supreme Court's decision to exclude from Rule 311 interlocutory replevin orders of type at issue here suggests Supreme Court did not intend for such orders to be appealable as of right). Similarly, we do not consider the order appealed from in this case to constitute an order affecting the possession or control of property as contemplated in Rule 311(a)(2). Likewise, Rule 342 expressly delineates various types of immediately appealable Orphans' Court orders, and an order directing the sale of a decedent's real property is not among those listed. **See generally K.T. v. L.S.**, 118 A.3d 1136, 1169 (Pa.Super. 2015) (explaining under statutory construction doctrine of *ejusdem generis* ("of the same kind or class"), where general words follow enumeration of particular classes of

file this interlocutory appeal under Pa.R.A.P. 312.[6] According to prevailing law, the order appealed from is also not immediately appealable as a collateral order.[7] *See Estate of Stricker, supra* (explaining that main cause of action in estate case is final administration of estate and distribution of estate property, and order to sell property in pursuit of division of estate assets among decedent's heirs is not collateral to main cause of action, but central to it). *See also Estate of Ash, supra* (holding order authorizing administratrix to sell real estate formerly belonging to decedent was not immediately appealable as collateral order). Because the

---

persons or things, general words will be construed as applicable only to persons or things of same general nature or class as those enumerated; when opposite sequence is found, *i.e.*, specific words follow general ones, doctrine is equally applicable, and restricts application of general term to things that are similar to those enumerated).

[6] *See* Pa.R.A.P. 312 (stating: "An appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)").

[7] *See* Pa.R.A.P. 313 (explaining appeal may be taken as of right from collateral order and defining collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"). Importantly, the appellant must demonstrate the order (or portion thereof) on appeal is collateral for purposes of Rule 313. *See Chase Manhattan Mortg. Corp. v. Hodes*, 784 A.2d 144 (Pa.Super. 2001) (stating appellant must affirmatively demonstrate collateral nature of order under review). *See also Rae v. Pennsylvania Funeral Directors Ass'n*, 602 Pa. 65, 977 A.2d 1121 (2009) (holding collateral order three-prong test must be applied independently to each distinct legal issue and restricting appellate review only to portion of order that is collateral; rejecting "whole order" approach; promoting judicial accuracy and economy over creative advocacy).

Orphans' Court order in this case is not immediately appealable, we lack jurisdiction to address Appellant's claims. ***See id. See also Estate of Stricker, supra***; ***Estate of Habazin, supra***. Accordingly, we quash the appeal.

Appeal quashed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2016