J-A08028-18

2018 PA Super 152

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 1392 EDA 2017 |
| CARLOS PEREZ | : | |

Appeal from the Order April 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0005268-2017,
MC-51-CR-0005268-2017

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

OPINION BY LAZARUS, J.:                                **FILED JUNE 05, 2018**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the order, entered after Carlos Perez's second preliminary hearing, dismissing the criminal charges against him. The trial court twice concluded that the Commonwealth failed to establish a *prima facie* case that Perez committed the offenses of first-degree murder[1] and possession of an instrument of crime ("PIC").[2] We conclude that the Commonwealth's appeal is interlocutory, and thus, we quash.

The trial court set forth the facts of this case as follows:

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 907.

---

\*   Retired Senior Judge assigned to the Superior Court.

On August 21, 2016, [Andrew Hazleton] arrived at the Bleu Martini with Hector Martinez after drinking on the waterfront in New Jersey. . . . Martinez saw a man in a gray shirt sitting in a [booth] . . . who [sic] he identified as [Perez] at [Perez's first] preliminary hearing.

Marquis McNair was working the inside front door as a bouncer on August 21, 2016. Around 1:50 a[.]m[.], McNair and his fellow bouncer witnessed a "little push match" between two groups of people. The pushing match occurred in a small side room to the left of the club entrance, which had two C[-]shaped booths along the right wall, and a bench along the back wall under the window. When the pushing match occurred, there were no more than 30 people in the area. McNair and his fellow bouncer ended the pushing match easily, and two of the men involved said[,] "like we know each other," "we friends," and "we cool, we cool." These two men were [Perez] and [Hazleton].

McNair and the other bouncer then stood about fifteen feet away from the two groups, in an area where they had a clear line of sight. Within a few minutes, another, more aggressive, pushing match occurred. The bouncers moved quickly to stop the second pushing match and McNair put himself between [Perez] and [Hazleton], while the other bouncer moved others in the area toward the door.

A few seconds after the bouncer broke up the second pushing match, McNair heard a woman scream in the crowd "they cut him." McNair then turned to [Hazleton] and saw him holding his neck. [Hazleton] removed his hand from his neck and blood gushed out of his neck and onto the floor. McNair also saw blood on his fellow bouncer's suit. McNair was unaware if anyone else got blood on them, or where [Perez] was located at this time, because his focus was on [Hazleton]. At this point, [Hazleton] walked past McNair and outside of the club.

McNair did not see [Hazleton] get stabbed. McNair did not see any weapon in [Perez's] hands, including when he got in the middle of [Perez] and [Hazleton] during the second pushing match. McNair testified that he would have been able to see if [Perez] was holding an object, regardless of the movement of [Perez's] and [Hazleton's] hands during the pushing matches. At no point did McNair see a weapon or any broken glass that could have been used to inflict [Hazleton's] wounds.

Martinez did not witness either pushing match, or any interaction between [Perez] and [Hazleton]. After he saw [Perez] get up from the booth and walk towards the group of dancers, he did not notice anything else until the bouncers quickly walked by him to break up the group. When [Hazleton] walked by him on his way out of the club, Martinez followed. Once outside, [Hazleton] removed his hands from his throat and more blood poured out. Martinez saw that [Hazleton] had been stabbed and Martinez "went berserk." He turned to go back in the club. As he tried to reenter, [Perez] attempted to leave the club. Martinez saw that [Perez] had blood on his shirt and assumed that he was the one who stabbed [Hazleton]. Martinez said to [Perez] "what did you do to my friend" and punched him in the face. [Perez] did not respond, but went back inside the club.

\*　　\*　　\*

After the stabbing, McNair was helping the rest of the staff clear out the club when he saw [Perez] sitting at a booth by himself. [Perez] was only wearing a tank top, which is against club policy. McNair asked [Perez] where his shirt was and he responded that he had thrown it out in the bathroom because it had gotten blood on it in the earlier incident. McNair then walked [Perez] to the bathroom, made him retrieve the bloody shirt, returned him to the booth, and then continued to help the rest of the staff. McNair last saw [Perez] talking to police, while handcuffed, with his shirt on his shoulder.

Officer Stone was alerted to a stabbing at the Bleu Martini by a passerby while he was standing at 2nd and Chestnut Street. After calling medics and waiting for [Hazleton] to be taken by ambulance to a hospital, Officer Stone entered the Bleu Martini and [Perez] was pointed out to him. Officer Stone was told that [Perez] was not allowed to leave because he owed $600.00 on his tab and had been in the group involved in the earlier "fight."

Officer Stone approached [Perez] and asked him what had happened. [Perez] originally denied being a part of the fight, but after several questions, admitted to being punched in the face earlier that night. When asked where his shirt was, [Perez] pulled the bloody shirt from behind him in the booth and showed it to Officer Stone. Officer Stone saw no blood on [Perez's] hands, or anywhere else on his body. Officer Stone also never saw an object

- 3 -

that could have inflicted the injury sustained by the victim. Officer Stone reported what he found to the detectives and was told to bring [Perez] to Central Detectives. [Perez] was released from Central Detectives and was not arrested in connection with the stabbing until February 23, 2017.

* * *

[Hazleton] sustained a stab wound in the neck, specifically the internal jugular vein on the left side at the carotid artery and trachea. The cause of death was homicide.

Trial Court Opinion, 6/28/17, at 3-8.

On March 22, 2017, the trial court held a preliminary hearing before the Honorable Thomas Gehret. At the conclusion of the hearing, Judge Gehret dismissed Perez's charges for lack of evidence. On April 5, 2017, the trial court held a preliminary hearing on refiled charges before the Honorable Kathryn Streeter-Lewis. At the conclusion of the preliminary hearing, the trial court again dismissed the charges for lack of evidence. On April 6, 2017, the Commonwealth filed a timely motion to reconsider and a motion to set bail pending trial. On April 7, 2017, after argument, the trial court denied both motions. On April 25, 2017, the Commonwealth timely appealed Judge Streeter-Lewis' April 5, 2017 order dismissing Perez's charges.[3] Both the trial court and the Commonwealth have complied with Pa.R.A.P. 1925. On appeal, the Commonwealth raises the following issue for our review:

_____

[3] The record does not reflect the existence of a signed order. However, the fact that there is no signed order does not hamper our review of this matter, as the Pennsylvania Rules of Appellate Procedure require only that the order be entered on the docket for it to be reviewed by this Court. *See* Pa.R.A.P. 301(a)(1), (c). Here, the record reflects the order was entered on the criminal docket.

Properly viewed in the light most favorable to the Commonwealth, did the evidence and all reasonable inferences therefrom establish a *prima facie* case of murder and related offenses, where [Perez] provoked two altercations with [Hazleton] moments before he was fatally stabbed in the neck, and then tried to flee the scene, conceal evidence, and lie to the police about his involvement?

Brief of Appellant, at 4.

The sole issue in this case is whether the Commonwealth established a *prima facie* case that Perez murdered Hazleton with an instrument of crime. Prior to addressing the merits of the issue raised by the Commonwealth, we must determine if this appeal is properly before us. Instantly, Perez does not argue that because the trial court dismissed the charges without prejudice, the order is not a final order and, thus, we should quash the appeal as interlocutory. However, it is incumbent upon this Court to raise jurisdictional issues *sua sponte* when appropriate. **Commonwealth v. Berardi**, 524 A.2d 1365, 1366 (Pa. Super. 1987).

A final order, for purposes of appeal, can be one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. **In re Estate of Cella**, 12 A.3d 374, 377 (Pa. Super. 2010); Pa.R.A.P. 341.

Generally, when the trial court dismisses criminal charges, the Commonwealth can simply refile charges and, therefore, an appeal from such an order is interlocutory. **Commonwealth v. Price**, 684 A.2d 640, 641 (Pa. Super. 1996). Traditionally, a determination of whether dismissal of criminal charges is considered a final order appealable by the Commonwealth rests

upon the trial court's reason for dismissal. ***Commonwealth v. Waller***, 682 A.2d 1292, 1294 (Pa. Super. 1996).

In ***Waller***, the Commonwealth averred its appeal of the dismissal of all charges against the defendant was appropriate where it had failed to produce any witnesses against the defendant at his preliminary hearing. The trial court dismissed the charges without prejudice, and jeopardy had not attached at the time of dismissal. ***Id.*** at 1295. The Commonwealth also conceded that when the trial court dismissed the charges, no Rule 1100[4] or statute of limitations problems existed. ***Id.*** The ***Waller*** Court, in determining whether it had appellate jurisdiction over the Commonwealth's appeal, stated as follows:

> [I]f the defect [that] precipitated the dismissal may be cured by the Commonwealth, a subsequent appeal to this Court is considered interlocutory. On the other hand, if the defect which requires the dismissal of charges is incurable, then the order dismissing the charges is final, and appellate review is proper. For example, ***an order dismissing the charges against a defendant based upon the Commonwealth's failure to establish a prima facie case has been considered interlocutory, as the Commonwealth may refile the criminal charges.*** Further, this Court has held that the *only* avenue of redress for the Commonwealth when a complaint has been dismissed is to refile the complaint before the statute of limitations has expired.

***Id.*** at 1294 (emphasis added) (citations omitted). The ***Waller*** Court determined that the Commonwealth's appeal was interlocutory, as the defects

---

[4] Pa.R.Crim.P. 1100 (renumbered and amended 3/1/00, eff. 4/1/01).

leading to the dismissal of charges against the defendant were curable. Accordingly, the **Waller** Court quashed the Commonwealth's appeal.

In a subsequent case, **Commonwealth v. Singletary**, 803 A.2d 769 (Pa. Super. 2002), this Court clarified that "**Waller** does not stand for the proposition that the Commonwealth may only re-file charges where it intends to present evidence that was neither known nor discoverable at the time of the prior preliminary hearing." **Singletary**, 803 A.2d at 774. **See also Commonwealth v. Carbo**, 822 A.2d 60, 66 (Pa. Super. 2003) (abrogated on different grounds) (there is "no explicit or implicit requirement that the Commonwealth must possess newly discovered evidence before it may refile criminal charges.").

Furthermore, an appeal from an order quashing a criminal charge or charges is not *per se* interlocutory. "In a criminal case . . . the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). In other words, an order quashing a criminal charge is unquestionably final and appealable as to that charge, since a trial on the remaining charges would permanently preclude trial on the quashed charge. **Commonwealth v. Karetny**, 880 A.2d 505, 512-13 (Pa. Super. 2005). Such orders, like some suppression orders, which are undeniably appealable by the Commonwealth, impose a handicap that the prosecution cannot overcome without a pretrial appeal. **Id.** at 513.

Here, the only charges the Commonwealth filed against Perez were first-degree murder and PIC. Following a preliminary hearing, the trial court dismissed all charges, due to lack of evidence, without prejudice. Similar to **Waller**, the Commonwealth sought to cure the defects leading to the dismissal of Perez's charges by refiling the charges and presenting new witnesses and additional evidence. **See Commonwealth v. Jones**, 633 A.2d 185, 187 (Pa. Super. 1993) (Commonwealth may seek to reinstate charges dismissed by magistrate by refiling same charges before different magistrate if Commonwealth intends to produce additional evidence at new preliminary hearing). Following a second preliminary hearing, a different trial judge again dismissed all of Perez's charges. The Commonwealth did not refile the charges; rather, it filed a motion to reconsider, arguing that it had "established a *prima facie* case against [Perez] for each of the material elements of the charges of [first-degree] [m]urder and [PIC]." Memorandum in Support of Motion to Reconsider, 4/6/17, at 6. The trial court denied the Commonwealth's motion.

On appeal, the Commonwealth only argues that the evidence of record is sufficient to establish a *prima facie* case of first-degree murder and PIC against Perez. The Commonwealth's statement of jurisdiction cites **Karetny** and Pa.R.A.P. 341. However, the Commonwealth's statement of jurisdiction is improper, insofar as the procedural posture of the instant case is clearly distinguishable from that in **Karetny**. Brief of Appellant, at 1 (**Karetny** court

held Commonwealth may "appeal from an order quashing criminal charges[.]").

In ***Karetny***, the Commonwealth sought to establish appellate jurisdiction pursuant to Rule 311(d), not Rule 341. The trial court dismissed only the felony charges against defendant, forcing the Commonwealth to proceed on only the misdemeanor charges if it had forgone its appeal. The Commonwealth correctly appealed from the order dismissing defendant's felony charges and certified, pursuant to Rule 311(d), that the trial court's quashal of charged felonies would substantially handicap its prosecution. ***See*** Rule 311(d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where [it] certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

Instantly, the Commonwealth cites to ***Karetny***, ***supra***, but it does not, nor can it, certify in its notice of appeal that dismissal of Perez's charges will terminate or substantially handicap the prosecution.[5] Moreover, the Commonwealth does not argue why it forewent refiling the charges or that the trial court's order precluded it from doing so (e.g., dismissal of charges with

---

[5] The Commonwealth's notice of appeal states as follows:

> Notice is hereby given that the Commonwealth of Pennsylvania hereby appeals to the Superior Court of Pennsylvania from the order of the Honorable Kathryn Street Lewis entered in this matter April 5, 2017. A copy of this order is presently unavailable.

Commonwealth Notice of Appeal, 4/6/17, at 1.

prejudice). Therefore, the proper course of action would have been to refile the charges. ***Jones***, 633 A.2d at 187-88 ("[T]he Commonwealth may seek to reinstate a charge dismissed by a magistrate by re-filing the same charge before a *different* magistrate.") (emphasis in original).

To refile the charges against Perez, the Commonwealth must only reasonably "***believe that its evidence was sufficient to establish a prima face case*** or [] [intend] to produce additional evidence at the new preliminary hearing." ***Id.*** at 188 (emphasis added). However, while the Commonwealth must be free to present its case again even after it has failed to convince a neutral magistrate that it has a *prima facie* case, its ability to re-present its case is not limitless. ***Commonwealth v. Medrano***, 788 A.2d 422, 427 (Pa. Super. 2001). "[I]f the Commonwealth's conduct intrudes unreasonably upon the due process right of individuals to be free from governmental coercion, the Commonwealth should not be permitted to present the case repeatedly before successive magistrates." ***Id.***

The Commonwealth's brief suggests that it reasonably believes it presented evidence sufficient to make a *prima facie* case against Perez, and thus, its ability to refile is not foreclosed. ***Jones***, ***supra***. Moreover, the Commonwealth argues neither that its prosecution of the foregoing charges is foreclosed by the statute of limitations, nor that a Rule 600 issue exists. In light of the foregoing, we find that the Commonwealth's appeal is from an interlocutory order, not a final order. As such, we are without jurisdiction to entertain it on its merits. ***Waller***, ***supra***; Pa.R.A.P. 741(b)(2) (appellate court

has no jurisdiction arising out of attempt to appeal interlocutory order that is not appealable as matter of right or without necessary permission).

Appeal quashed.

Judge Panella joins this Opinion.

Judge Strassburger files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/18