**In re ESTATE OF John J. STRAHSMEIER, Deceased.**

**Appeal of Co–Executrices, Rose M. Regan and Lois A. Phillips.**

Superior Court of Pennsylvania.

Argued March 28, 2012.
Filed Sept. 7, 2012.
Reargument Denied Nov. 8, 2012.

Robert J. Colaizzi, Pittsburgh, for appellant.

Robert J. Amelio, Pittsburgh, for appellee.

BEFORE: DONOHUE, LAZARUS and OTT, JJ.

OPINION BY OTT, J.:

Rose M. Regan and Lois A. Phillips, two of the three co-executors of the Estate of John J. Strahsmeier ("Estate") appeal from the order of court entered on July 25, 2011 in the Court of Common Pleas of Allegheny County, Orphans' Court Division, which denied their motions for reconsideration and stay and dismissed their exceptions to the July 1, 2011 order. After careful consideration of the submissions by the parties, official record, and relevant law, we affirm.[1]

We summarize the long and tortuous factual and procedural history of this matter as follows:

Decedent died on September 13, 2008, survived by his three children, John T. Strahsmeier, Regan and Phillips (collectively "children").[2]

Decedent executed his Will on June 6, 2003. On February 13, 2006, Decedent

---

[1] On February 17, 2012, Appellants Regan and Phillips filed a motion to strike the brief of Appellee Strahsmeier and/or request that Strahsmeier be prohibited from engaging in oral argument. Strahsmeier's brief and argument were considered by this Court.

[2] Decedent's spouse, Rose Marie Strahsmeier, predeceased him on November 6, 1985.

established a money market checking account[3] at First National Bank of Pennsylvania ("First National"). Decedent was the sole owner of this account. On October 17, 2006, Decedent revised ownership, listing Regan as "ITF" (hereinafter "ITF Account").[4] At various times, other accounts owned by Decedent were opened and revised at First National.[5]

In May 2007, Decedent prepared binders (hereinafter "the binder") containing detailed descriptions and information as to his funeral, burial, assets, debts, accounts, and estate management.[6] The binders were given to Regan, Phillips, Strahsmeier, and C. Donald Gates, Jr., Esquire.[7] All binders were updated regularly by Decedent.

The binder directs that upon his death, Strahsmeier, Regan, and Phillips were to take the monies from the accounts they shared with Decedent and deposit them into an estate account. The Estate Account would, after payment of debts, be divided equally among the children.[8] The ITF Account containing the majority of

the assets of the Estate was to become the Estate Account.

Following Decedent's death, Regan and Phillips sought intestate probate averring they did not know if a valid Will was in existence.[9] Letters of administration were issued to Regan and Phillips as co-administrators of the Estate on September 24, 2008. On October 3, 2008 Regan and Phillips, as co-administrators, filed a petition to show cause why Strahsmeier and his wife should not be directed to deliver Decedent's assets to the court.[10]

On October 6, 2008, Strahsmeier presented to the court a petition to enter a photocopy of the Decedent's June 6, 2003 Will. Regan and Phillips immediately filed a caveat with the Register of Wills.

On October 16, 2008, Treasury Bill *H20 matured and $40,000 was electronically deposited into the ITF Account. Shortly thereafter, Regan withdrew the contents of that account, totaling $140,200.26.

When on January 14, 2009, Strahsmeier presented for filing the original June 6, 2003 Will and the March 20, 2007 Codicil,[11]

3. Account no. *064.

4. Strahsmeier Exhibit 9, 5/12/2012.

5. A checking account, no. *390; a savings account, no. *194; and a certificate of deposit no. *900.

6. Mr. Gates testified Decedent's plan, set forth in the binders, was to avoid probate. N.T., 3/10/2011 at 18.

7. Decedent's long-time counsel and scrivener of the Will and Codicil.

8. Because of an unpaid loan to Regan made by Decedent during his life, she was to receive $20,000 less from the balance of the Estate Account than Strahsmeier and Phillips.

9. This petition is not contained in the original record or listed on the docket. However, a time stamped copy of the petition and the

grant of letters of administration are dated September 24, 2008. *See* Exhibit A to Petition for Citation Against John T. Strahsmeier and Sandra K. Strahsmeier to Show Cause Why Respondents Should Not Be Directed to Deliver the Decedent's Assets to Custody of the Court, 10/3/2008.

10. The sisters alleged Strahsmeier had removed assets from Decedent's safe deposit box pursuant to his powers as co-agent under the May 15, 2004 power of attorney ("POA").

11. Although Decedent prepared a Codicil to the Will dated March 20, 2007, it is not relevant for purposes herein. The Codicil directs where the three executors cannot all agree, then John T. Strahsmeier's decision will prevail. The trial court found "[Strahsmeier] has the authority to make the final decision if all three Co-Executors are unable to agree; it does not mean, 'majority rules', as was posited by [Regan] and [Phillips]". Trial Court

Regan and Phillips withdrew the caveat. Pursuant to the June 6, 2003 Will, Strahsmeier, Phillips, and Regan were appointed co-executors of the Estate.

On June 23, 2009, Phillips filed an Inheritance Tax Form on behalf of the Estate. The tax form listed the ITF Account ($108,477.75) and Treasury Bill *H20 ($40,000) as assets of the Estate.

On May 12, 2010, the orphans' court directed Regan and Phillips[12] to file an Account for the Estate. Strahsmeier was required to cooperate fully in providing information they might need. Regan and Phillips filed, on June 15, 2010, a First and Final Account and Inventory. Strahsmeier filed objections as well as supplemental objections to both the Account and Inventory on July 27, 2010. Among the objections to the Inventory were those stating that the ITF Account ($108,477.75) and Treasury Bill *H20 ($40,000) were not listed as assets of the Estate. A prolonged and contentious period of discovery followed.

On December 3, 2010, Regan and Phillips filed an amended Inventory. An amended Account was filed on December 20, 2010. After further procedural posturing and filings, a hearing was finally held on May 12, 2011. The Honorable Lawrence J. O'Toole filed his memorandum opinion and order on July 1, 2011. Regan and Phillips filed timely exceptions to the order.[13]

On July 25, 2011, Judge O'Toole issued his second memorandum opinion and order, which dismissed the exceptions. This timely appeal followed on August 9, 2011.

■ On appeal, Regan and Phillips contend the orphans' court erred as a matter of law in: 1) concluding Strahsmeier produced clear and convincing evidence to overcome the presumption the bank account was a Totten trust;[14] 2) concluding the account was a convenience account rather than a Totten trust; and 3) concluding the Treasury Bill (*H20) which matured on October 16, 2008, in the principal amount of $40,000, was the property of the Estate and not Regan.

Our standard of review of an orphans' court's decision is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are

---

Opinion, July 1, 2011, at 3–4 ¶ 6. This issue was not appealed.

**12.** The order was so directed because they had served as co-administrators of the Estate from September 24, 2008 until January 14, 2009.

**13.** A motion for stay was filed and denied. Contemporaneously they also filed a motion for reconsideration which was denied. "Exceptions shall be the exclusive procedure for review by the Orphans' Court of a final order, decree or adjudication. A party may not file a motion for reconsideration of a final order." Pa. O.C. Rules 7.1(g).

**14.** As of October 2006, the account form was marked "John Strahsmeier ITF Rose Regan." Strahsmeier Exhibit 9, 5/12/2012. Although First National never defines "ITF", common usage delineates it as the abbreviation "In Trust For" and we presume that the bank intended this account to be defined by 20 Pa.C.S. § 6301, *supra*.

Regan and Phillips refer to the account as a Totten trust. "A [T]otten trust allows the depositor to retain ... complete control of the fund during his life and yet secure to the beneficiary any balance standing in the account at the death of the depositor." *In re Rodger's Estate*, 374 Pa. 246, 97 A.2d 789, 790 (1953), quoting *In re Scanlon's Estate*, 313 Pa. 424, 169 A. 106, 108 (1933) (internal quotations omitted).

Because the parties do not dispute the applicability of the MPAA, 20 Pa.C.S. § 6301–6306, *supra.*, we need not analyze whether the ITF Account is a Totten trust. The issue herein is not the type of account, but whether there exists clear and convincing evidence

supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Smith,* 890 A.2d 1082, 1086 (Pa.Super.2006) (citations and internal quotation marks omitted).

An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be ... manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*In re Estate of Cella,* 12 A.3d 374, 378 (Pa.Super.2010) (internal citations and quotations omitted).

■■■ We first address the issue of the Treasury Bill. The trial court, in its Findings of Fact,[15] determined the funds from Treasury Bill *H20 were an asset of the Estate. "We are bound by the lower court's findings of fact if they are supported in the record, but we must examine any legal conclusions drawn from those facts." *Id.* (quoting *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093, 1096 (1993)).

"Legal title to all personal estate of a decedent shall pass at his death to his personal representative, if any, as of the date of his death." 20 Pa.C.S. § 301(a). It is not in dispute that Treasury Bill *H20 was registered and owned by Decedent alone. The Estate was the successor owner of the matured Treasury Bill. Because the U.S. Treasury Department was not notified in a timely manner of Decedent's death, when Treasury Bill *H20 reached maturity it was deposited to the account of record, the ITF Account. Even though the proceeds were deposited in the ITF Account which contained Regan's name, it did not change the nature of the money. The ITF Account was the only known conduit from the U.S. Treasury Department to the Decedent. The orphans' court correctly found the $40,000 belonged to the Estate. Because Regan has no right to the monies, they must be returned to the Estate as directed by the orphans' court. This issue fails.

■■■ We examine the final two issues together.[16] We must decide whether the orphans' court was correct in determining

---

that Decedent had an intent contrary to Regan's right of survivorship in the ITF Account.

**15.** Orphans' Court Memorandum Opinion and Order, 7/1/2011 at 3 ¶ (1).

**16.** A. Did the Trial Court commit an error of law in concluding that the [Strahsmeier] had produced clear and convincing evidence of a contrary intent on the part of the decedent to rebut the strong statutory presumption as set forth in the Pennsylvania Multi–Party Account Act (MPAA) 20 Pa.C.S. § 6301, et. seq., that the monies held in the Totten Trust Account with First National Bank of Pennsylvania, at the time of his death on September 13, 2008, should pass to his Estate rather than the designated beneficiary, [Regan]?"

B. Did the Trial Court err, as a matter of law, in concluding that the Totten Trust Account established by the decedent, John J. Strahsmeier, on October 17, 2006, some 23 months prior to his death on September 13, 2008, was merely a convenience account and therefore, all funds on deposit in the Totten Trust Account held with First National Bank of Pennsylvania should pass to his Estate, rather that [sic] the designated beneficiary, i.e., Appellant, Rose M. Regan?

Brief of Regan and Phillips, at 4.

**364**

that Strahsmeier, as coexecutor, proved by clear and convincing evidence that Decedent, when he created the ITF Account had an intent contrary to Regan's presumed right of survivorship. We affirm the ruling on these issues, albeit on grounds different from those relied upon by the orphans' court.[17]

The Multiple Party Accounts Act (MPAA), 20 Pa.C.S. §§ 6301–6306, provides in relevant part:

> "Trust account" means an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sum on deposit in the account; it is not essential that payment to the beneficiary be mentioned in the deposit agreement. A trust account does not include a regular trust account under a testamentary trust or a trust agreement which has significance apart from the account, or a fiduciary account arising from a fiduciary relation such as attorney-client.

20 Pa.C.S. § 6301.

> (b) Trust account.—At the death of the trustee or the survivor of two or more trustees, any sum remaining on deposit belongs to the person or persons named as beneficiaries, if surviving, or to the survivor or survivors of them if one or more die before the trustee or last surviving trustee, **unless there is clear and convincing evidence of a contrary intent;** if two or more beneficiaries sur-

vive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them.

20 Pa.C.S. § 6304(b) (emphasis added).

The parties and the orphans' court relied upon the holdings in *In re Novosielski Estate*, 605 Pa. 508, 992 A.2d 89 (2010) and *In re Estate of Cella*, 12 A.3d 374 (Pa.Super.2010) which address Section 6304(a). Our Supreme Court has held that the: "conclusion that such clear and convincing evidence exists simply when a court determines that the provisions of a pre-existing will indicate a distribution scheme in conflict with one under a co-existing joint account is not supportable under a plain reading of the MPAA or otherwise." *In re Novosielski*, 605 Pa. 508, 992 A.2d 89, 102 (2010). We recognize the precedent established by these cases; however, this case requires interpretation of Section 6304(b) and contains distinguishable and unique facts.

We do not have merely the Will as the expression of Decedent's intent. This record contains the following in support of Decedent's intent that the ITF Account not be the sole property of Regan after his death: 1) the designation at all times of the ITF Account as an "Individual" owned account; 2) the testimony of Decedent's long-time lawyer, C. Donald Gates, Esquire;[18] 3) the binder prepared by Decedent; 4) the post-death actions of Phillips and Strahsmeier regarding bank accounts they each held with Decedent; and 5) Regan's statements showing her knowledge of Decedent's intent.

---

17. "As an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus we are not constrained to affirm on the grounds relied upon by the trial court." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1269 (Pa.Super.2007).

18. The March 3, 2011 deposition testimony of Mr. Gates was made a part of the original record by stipulation of the parties. N.T., 5/12/2011 at 149.

The ITF account was opened on February 13, 2006 by Decedent in his name alone. The box entitled "Ownership of Account—Consumer" contains a typed "X" next to "Individual." Strahsmeier Exhibit 9, 5/12/2011. The signature cards for the ITF Account, which are a part of the record show revisions were made on October 17, 2006 and September 8, 2008. *Id.* Although the specific revisions are not noted, the account holders as of October 17, 2006 are Decedent and "ITF Rose Regan." The ITF Account ownership designation on both revised signature cards remained marked as "Individual" even though there is an option of "Totten Trust (ITF)" in the block.

As indication that the ITF Account's ownership designation as "Individual" was not an oversight, the record also contains the signature cards of three other First National accounts: a checking (*390), a savings (*194), and a certificate of deposit ("CD account"). The CD account and the savings account (*194) were both originally opened and owned solely by Decedent. Both of these accounts were revised on September 8, 2008, five days before Decedent died, to add children as agents pursuant to the POA. The ownership designation on both accounts remained marked as "Individual" after the revisions were made.

Checking account (*390) was opened in 1969.[19] On December 22, 1993, Phillips was added to this account and the ownership section was changed to "joint with right of survivorship (not as tenants in common)." On July 28, 2008, Decedent revised the account to add Strahsmeier.[20] The account was again revised on September 8, 2008 when Regan was added to the account. The ownership block shows it is a "joint with right of survivorship (not as tenants in common)" account. Clearly, Decedent was aware of the different options and the choice for each account reflected his intention.

Mr. Gates testified to his knowledge of Decedent's intent regarding ownership of the balance of the ITF Account upon his death. The orphans' court found Mr. Gates' testimony to be credible.[21] Mr. Gates testified unequivocally that Decedent's estate plan was to have all of his assets "gathered, liquidated and divided into three equal shares." N.T., 3/10/2011 at 9. He also stated, "[Decedent's] whole estate plan was predicated upon an equalized distribution, and if [Decedent] decided that everything that was in that [ITF Account], was going to go to [Regan], it would have skewed the whole estate plan in [Regan's] favor." *Id.* at 17.

Further, Mr. Gates testified that sometime after Regan's name had been placed on the ITF Account, at his suggestion Decedent confirmed with First National that Regan's son, his grandson, was not named on the ITF Account because it "would be indicative of the fact that [Decedent] intended that to be the Regan money." *Id.* at 18.

We have reviewed the Decedent's binder, which we note is extraordinary in its detail as to the Decedent's intent. The binder states:

> *Most important to me* is that all of you act civil towards one another Regardless of previous disagreements, also that you refrain from any Law suites [sic] against the estate or one another, being this will cost each Of you time off from your

---

**19.** One handwritten sheet appears to say, "1959".

**20.** There type of ownership was not designated in this revision.

**21.** Orphans' Court Second Memorandum Opinion and Order, 7/25/2011 at 4.

place of employment and legal fees are very expensive in these type of matters.

. . . .

First National Bank there are three accounts, Savings Account, Checking Account and [ITF Account] each of your names are on one of These accounts whereby I can draw monies from the accounts but you Are not eligible. All are covered under p.o.d. (pay on death)[.]

The day after the funeral open a[sic] estate checking account put my saving [sic] Account and checking in it if possible leave the money market [ITF Account] as is Being the interest rate will earn you substantial money.

Binder, 5/3/2007 at 1 (emphasis in original). This further evidences that the ITF Account would not become the sole property of Regan, as it in fact directs the children to leave the account open to generate further income for "you", meaning all of them. *Id.*

Additionally, Decedent specified that the children were to work together to "COLLECT ALL OUTSTANDING MONIES AND PAY ALL FORTH COMING BILLS FROM THE MONEY MARKET CHECKING ACCT [ITF Account]." *Id.* at 35 (emphasis in the original). The binder instructs Strahsmeier:

[ITF Account] RECEIVES MONTHLY ALLEG. COUNTY PENSION CHECK. THIS ACCT IS TO BE THE MAJOR ESTATE ACCT ALL MONIES FROM INSURANCES, ANNUITIES [sic], HOME SALE, AUTO SALE, OTHERS, SHALL BE DEPOSITED INTO THIS ACCOUNT. AFTER THE HOUSE IS SOLD AND ALL MONIES ARE DEPOSITED

AND ALL DEFERRED [sic] TAXES (H–BONDS) AFTER FUNERAL MEAL, ALL HOME UTILITIES GRASS CUTTING ETC. A MEETING SHALL BE SET WITH ED CONLEY CPA TO DISTRIBUTE EQUAL FUNDS LESS AMOUNTS PREVIOUSLY BORROWED [Regan's $20,000] AND TO PAY ALL MY TAXES OWED UP TO THE DAY OF MY DEATH, THE FOLLOWING UTILITIES AND EXPENSES PAID SHALL BE BY THE ESTATE ALSO ALL TAXES SHALL BE ESTATE TAXES EXCEPT THE DEFERRED [sic] TAXES FOR THE H–BONDS TO BE PAID BY THE ESTATE. AFTER ALL IS PAID AND DIVIDED IN FAIR SHARES, CLOSE THIS ACCOUNT.

Binder, 5/3/2007 at 38 (emphasis in original). It also states:

SHOULD YOU START TO RUN LOW [in paying utility Bills and school and county taxes out of checking account (*390) ] YOU CAN ALWAYS TAKE MONEY FROM THE [ITF Account] AND TRANSFER IT TO THIS ACCT BEING I HAVE MY OWN MONEY IN THE [ITF Account] BEFORE YOU START MOVING THE VARIOUS FUNDS INTO IT AFTER THE HOUSE IS SOLD CLOSE IT.

*Id.* (emphasis in original).

All of the children were aware of the Decedent's intent for the distribution of his estate. The record shows Strahsmeier and Phillips, following the directives of the binder, deposited all proceeds of assets and accounts [22] including the checking account (*390) which was held jointly with right of survivorship (not as tenants in common) into the Estate Account.

---

**22.** The only assets not placed into the Estate account are the two at issue herein, the Trea-

sury Bill and the ITF Account.

Additionally, the record contains the Inheritance Tax form filed by Phillips on June 23, 2009. In the filing, Phillips lists both the ITF Account and the $40,000 Treasury Bill as assets of the Estate. This form was filed after Regan's May 20, 2009 withdrawal of all funds from the ITF Account.

Regan had knowledge of Decedent's intent regarding the ITF Account. Mr. Gates testified to witnessing a contentious meeting between the children shortly after Decedent's death. He testified:

> So when [Strahsmeier] came in, [Regan and Phillips] immediately confronted him, like, two tigers attacking a cub, and accused him of stealing this money. Apparently, what they were talking about was just nickels and dimes, and [Strahsmeier] had money, threw it on the table and said, "You figure it out." [Strahsmeier] was antagonistic towards them. There was a lot of antagonism in the room. [Phillips] and—[Regan] had said that "If you just admit you took the money and put it back, then we'll go ahead and do it just like Dad wanted us to do."

N.T., 3/10/2011 at 20. When asked what this statement was in reference to Mr. Gates testified: "The division of the [ITF Account]. *Id.* Mr. Gates then clarified that Regan was the declarant of the statement.[23]

The record also reflects the following exchange between Judge O'Toole and Regan:

> THE COURT: ... [I]f your dad had given you some instruction, whether it's a binder, orally or whatever, would you have followed your dad's instructions?
>
> [REGAN]: No.
>
> THE COURT: You would not?

> [REGAN]: He left the account in my name, so I did not have to—
>
> THE COURT: I'm not asking you that so much. Pointedly but generally speaking, generally speaking—forget about accounts—if your dad said, hey, Rose, look, I'd like you to do this and this and I'm going to put it in writing, here it is, would you follow his instructions because he was your dad?
>
> [REGAN]: I guess if it would make sense at the time, but things change.

N.T., 5/12/2011 at 143.

The record supports overriding the distribution scheme enunciated in the MPAA because co-executor Strahsmeier proved by clear and convincing evidence that Decedent had an intent contrary to Regan's right of survivorship at the time he revised the ITF Account to include Regan's name. Because Regan had no right to the monies in the ITF Account, they must be returned to the Estate as directed by the orphans' court.

Accordingly, we affirm the orphans' court's dismissal of the exceptions of Regan and Phillips.

Motion to strike the brief of Appellee Strahsmeier and/or request that Strahsmeier be prohibited from engaging in oral argument denied.

Order affirmed.

---

**23.** "It was [Regan] who made that state-   ment." *Id.*