J-A30023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: WILLIAM MCCRUM, AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ANNA MCCRUM | : : : : : : : | No. 1035 MDA 2019 |

Appeal from the Order Entered May 22, 2019
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2019-17

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED JUNE 30, 2020**

Appellant Anna McCrum appeals from the order denying her petition for special relief requesting permission to contact her husband, William McCrum (Mr. McCrum), an incapacitated person.  Appellant argues that Appellees, the plenary co-guardians of Mr. McCrum, cannot refuse to allow Appellant to contact or visit Mr. McCrum in a care facility when the guardianship order does not include a no-visitation provision.  We affirm.

By way of background to this appeal, Mr. McCrum and Appellant married on October 29, 2005.  Mr. McCrum has three adult children, including Appellees, from a previous marriage.  Currently, Appellant is approximately eighty years old.  Mr. McCrum is approximately eighty-five years old and has

_____

[*] Retired Senior Judge assigned to the Superior Court.

been diagnosed with a number of ailments including Alzheimer's disease and vascular dementia.

Appellant cared for Mr. McCrum in their home until Mr. McCrum suffered a fall in October 2018. N.T., 5/13/19, at 56, 78. Following a hospital stay, Mr. McCrum lived in several residential care facilities. *Id.* at 80-83, 86. Appellant removed Mr. McCrum from his current care facility, Graystone Manor (the facility), against medical advice.[1] *Id.* at 14, 88.

On January 18, 2019, the Huntingdon-Bedford-Fulton County Area Agency on Aging (the Agency) received two reports of caregiver neglect regarding Appellant's removal of Mr. McCrum from the facility and conducted an investigation to determine their validity. *Id.* at 13-14. The investigation uncovered that Appellant had removed Mr. McCrum from two prior care facilities against medical advice. *Id.* at 14. Appellant had not arranged for skilled nursing to assist her in Mr. McCrum's care at home. *Id.* at 15. Further,

_____

[1] While the report to the Agency indicated the removal was against medical advice, there was no discussion on the record of specific medical advice given for Mr. McCrum. N.T., 5/13/19, at 14. Our review indicates that there is no recommendation of a no-contact order barring Ms. McCrum's visitations in any of the medical reports. Dr. Elias Rifkah, Mr. McCrum's attending physician, prepared a medical evaluation on March 7, 2019. The evaluation indicated that Mr. McCrum is incontinent and requires assistance to ambulate. *See* Med. Eval., 3/7/19. Ms. Christina Harnish, a nurse providing daily care to Mr. McCrum at the facility, testified that he has 24-hour care at the facility to meet his needs. N.T., 5/13/19, at 42. Notably, Appellant was unable to lift or assist Mr. McCrum following his fall at home in October 2018. *Id.* at 57. Appellant did not call an ambulance. *Id.* at 79. Mr. McCrum moved directly to a rehabilitation center following his discharge from the hospital. *Id.* at 80-81.

the Agency found that there was a two to four week wait before the necessary home nursing care would be available for Mr. McCrum. *Id.* at 16.

Pursuant to 20 Pa.C.S. § 5513, the Agency filed a petition for emergency plenary guardianship of Mr. McCrum on the basis that he could not care for himself and that he was not receiving adequate care at home. That same day, the orphans' court granted the petition and appointed the Agency as the emergency guardian. The court then appointed Ray A. Ghaner, Esq., as attorney for Mr. McCrum.[2] The Agency returned Mr. McCrum to the facility on January 18, 2019. On the same day, Ms. Swan, an Agency supervisor informed Appellant that "until further notice, she was not to have any contact with Mr. Crum." *Id.* at 18-19. This verbal directive was never memorialized in writing. On January 23, 2019, the Agency placed Appellant on the no-visitation list after Mr. McCrum became agitated during a phone call with Appellant. *Id.* at 6-8. On January 25, 2019, Ms. Heaton, who is Ms. Swan's supervisor, informed Appellant by telephone that she would not be permitted further phone calls with Mr. McCrum. *Id.* at 7-8. This verbal directive was also not memorialized in writing.

On February 1, 2019, the Agency filed a petition[3] to determine the incapacity of Mr. McCrum and to appoint the appropriate guardian, limited or plenary. On March 11, 2019, the orphans' court held a hearing on the

---

[2] 20 Pa.C.S. § 5511(a)(2).

[3] 20 Pa.C.S. § 5512.1(a).

- 3 -

Agency's petition. At the hearing, a medical evaluation, a psychiatric evaluation, and a letter from Dr. Elias Rifkah, Mr. McCrum's primary physician, were all admitted by agreement of counsel to support a finding of a lack of capacity. Testimony at the hearing indicated that Appellant removed Mr. McCrum from care facilities against medical advice three times, including the January 2019 removal, and did not have adequate care available in their home. Following the hearing, the orphans' court adjudicated Mr. McCrum totally incapacitated pursuant to Section 5512.1(a), and appointed Appellees, Timothy and William McCrum, to serve as plenary co-guardians of Mr. McCrum's person and estate.[4] Appellees maintained the no-visitation directive against Appellant that the Agency established as the emergency plenary guardian.

In response, Appellant filed the instant emergency petition for special relief on April 16, 2019, alleging that Appellees exceeded the scope of their authority as guardians by barring contact between Appellant and Mr. McCrum, and that the decision was not in Mr. McCrum's best interests.[5] The orphans'

---

[4] 20 Pa.C.S. § 5512.1(e).

[5] The orphans court properly treated Appellant's petition as a request for a review hearing on the basis that the petition alleged that the plenary co-guardians failed to perform their duties in the best interest of Mr. McCrum by adopting the Agency's no-visitation directive. **See Gavin v. Loeffelbein**, 205 A.3d 1209, 1222 n.16 (Pa. 2019); **see also** Pa.O.C.R. 14.9. The statute provides:

court held a hearing on May 13, 2019. The orphans' court summarized witness testimony from the hearing in its Memorandum, dated July 29, 2019, filed in lieu of a Pa.R.A.P. 1925(a) opinion, as follows:

19. Ms. Lori Heaton, a Supervisor II with the Agency testified at the May 13, 2019 hearing.

20. Ms. Heaton has thirty-two years of experience with the Agency.

21. She testified that on January 18, 2019[,] the Agency received a report of need regarding [Mr. McCrum].

22. She indicated she appointed Ms. Mary Beth Swan, an Aging Care Manager Supervisor to manage the case.

23. Ms. Swan testified that she has had extensive training in the field of elder care.

* * *

26. Ms. Swan testified that the reports . . . indicated neglect on the part of [Appellant] since she had removed her husband against medical advice from [the facility on January 18, 2019].

27. Ms. Swan indicated that she verified this information, and talked to Mr. McCrum's doctor.

28. Then, she said, she went to the McCrum residence and met Mr. [McCrum and Appellant].

---

**§ 5512.2. Review hearing**

**(a) Time of hearing.–** . . . The court shall conduct a review hearing promptly if the incapacitated person, guardian or any interested party petitions the court for a hearing for reason of . . . the guardian's failure to perform his duties in accordance with the law or to act in the best interest of the incapacitated person. The court may dismiss a petition for review hearing if it determines that the petition is frivolous.

20 Pa.C.S. § 5512.2(a).

29. Appellant told her . . . that she brought [Mr. McCrum] home because she felt it was a better situation for him even though she had not arranged for caregivers to come to the home to assist in Mr. McCrum's care.

30. Ms. Swan testified that [Appellant] told her she was not able to provide care for her husband.

\* \* \*

32. According to Ms. Swan, [Appellant] reacted with anger to the prospect of the Agency being appointed guardian of [Mr. McCrum].

33. [Appellant], [Ms. Swan] testified, went behind [Mr. McCrum,] who was seated in a chair, put her arms over him in order to restrain him, and then told him in a loud voice that his children were splitting them up and were trying to ruin their marriage.

34. Mr. McCrum became very distressed, and began to cry according to Ms. Swan.

\* \* \*

38. Ms. Swan testified that her training and experience with respect to elder dementia have taught her that individuals with dementia require low stimulation environments.

39. Thus, she said it is her custom and practice to remove family members and caregivers who are contentious or difficult

40. Consequently, in this case, she subsequently issued the no contact [directive] which is the subject matter of this litigation.

41. The [o]rder, she said, was based on what occurred on January 18, 20[1]9, her interactions with [Appellant] and the information she received from collateral sources.

\* \* \*

43. Therefore, in this case, [Ms. Swan] learned that the removal of Mr. McCrum from [the facility] on January 18th was the third time in several months that [Appellant] had removed her husband from a care facility.

44. She also learned that her supervisor, Ms. Heaton, ha[d] arranged for telephone contact between [Appellant] and [Mr. McCrum] on January 23, 2019.

45. The call was monitored by Ms. Christina Harnish, a nurse at [the facility].

46. Ms. Harnish testified that the call lasted over an hour, and that Mr. McCrum . . . became very agitated and upset.

47. She heard . . . [Appellant] repeatedly tell Mr. McCrum that she wasn't allowed to come to [the facility] because of his kids.

48. He cried, she said, because he didn't understand.

\* \* \*

61. Tim, a Co-Guardian, said he and his brother William continued the no contact [provision] initiated by the Agency because they believed and still believe it is in [Mr. McCrum's] best interest.

62. Their conclusion, he said, was based on [Appellant's] behavior in the past.

63. On this point, he testified she kept [Mr. McCrum] isolated, kept him sitting in a chair, and refused to let him walk around or attend activities.

64. Also, Tim related that [Appellant] was never supportive of him and his siblings being involved in the care of their father.

65. Today, he said, [Mr. McCrum] looks healthy, is moving around and is happy.

Orphans' Ct. Op., 7/29/19, at 3-6, 8.

The orphans' court denied Appellant's petition on May 22, 2019, finding

that:

1. The testimony of Ms. Mary Beth Swan was persuasive. She expressed the opinion that contact between [Mr. McCrum and Appellant] was not in Mr. McCrum's best interest. She based her opinion on her training and education and thirty-nine years' experience in the field of elder dementia. In forming her opinion she did an investigation that included personal contact with [Mr. McCrum and Appellant] and collateral sources including Mr. McCrum's doctor and members of his family. No testimony suggested that [Ms.] Swan's opinion was in error. Given the fact that Mr. McCrum no longer knows who Mrs.

McCrum is, it cannot in our view be successfully argued that no contact with her is detrimental to him.

2. Ms. Lori Heaton who is Ms. Swan's supervisor obviously approved the no contact [directive] issued by Ms. Swan. Ms. Heaton had thirty-two years of experience and this [c]ourt . . . found her opinions and judgments reliable. Again, no evidence was presented in this case to refute the Agency's decision that no contact was in Mr. McCrum's best interest.

3. . . . The testimony was unequivocal that today Mr. McCrum is doing very well at [the facility] and that he is healthy, happy, and social. In short there is . . . no reason for this [c]ourt to interfere.

*Id.* at 11.

Appellant filed a timely motion for reconsideration on June 3, 2019.[6] On June 24, 2019, Appellant simultaneous filed a timely notice of appeal and statement of matters complained of on appeal. The orphans' court filed a responsive opinion on July 29, 2019.

In her brief, Appellant raises three issues for our review.

[1]. Whether the [orphans'] court abused its discretion in applying the statute and evaluating the best interests of [Mr. McCrum.]

[2]. Whether the [orphans'] court erred in evaluating the evidence presented that denied [Appellant] access to her husband[.]

[3]. Whether the [orphans'] court erred when it denied the petition without any evidence that [Mr. McCrum] desired to remove the Appellant from his life[.]

_____

[6] The orphans' court did not expressly rule on the motion.

Appellant's Brief at 7.[7]

Our standard of appellate review of an orphan's court decree employs a deferential standard. *In re Estate of Strahsmeier*, 54 A.3d 359, 362 (Pa. Super. 2012). However, we must ensure that the court's decision is free from legal error. *In re Estate of Rosengarten*, 871 A.2d 1249, 1253 (Pa. Super. 2005). Our Supreme Court has reiterated the principle that reviewing courts are "bound by the trial judge's finding of facts unless the findings are not based on competent evidence. Conclusions of law, however, are not binding on an appellate court whose duty it is to determine whether there was a proper application of law to fact by the lower court." *In re Peery*, 727 A.2d 539, 540 (Pa. 1999) (citation omitted).

Therefore, "the orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Leipold*, 208 A.3d 507, 510 (Pa. Super. 2019) (citations omitted and some formatting altered). "An abuse of discretion exists when the trial court has rendered judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *In re Duran*, 769 A.2d 497, 506 (Pa. Super. 2001) (citation omitted).

---

[7] Appellees, the plenary co-guardians, did not submit a brief. Ray A. Ghaner, Esq., counsel for Mr. McCrum, submitted a brief as Appellee indicating his client's inability to express a preference in this matter due to his incapacity and impairment.

In her first issue, Appellant essentially argues that the orphans' court abused its discretion when it determined that the plenary co-guardians' action of placing Ms. McCrum on the no-visitation list was in Mr. McCrum's best interests. Appellant's Brief at 15. Appellant contends that the court's findings were contrary to Pennsylvania's Decedents, Estates and Fiduciaries Code because the record lacked "any medical [testimony] and competent evidence that it was in [Mr. McCrum's] best interest to deny visitation."[8] *Id.* at 16.

Appellant concedes that Mr. McCrum has Alzheimer's disease and should be in a care facility. *Id.* at 19-20. However, Appellant asserts that because "there was testimony that [Mr. McCrum] was doing well at the facility and being responsive and stable, visits must be an option to reunite the married couple at the facility." *Id.* at 21-22.

In her second issue, Appellant argues that the orphans' court erred in denying her petition without medical or "any other evidence presented by guardians" that removing Appellant from Mr. McCrum's life is in his best

---

[8] Pennsylvania's Decedents, Estates and Fiduciaries Code defines an incapacitated person as follows.

### § 5501. Meaning of incapacitated person

"Incapacitated person" means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S. § 5501.

interests. *Id.* at 23. Appellant argues that she was never told that her presence in Mr. McCrum's life was detrimental to his health. *Id.* at 25. Further, Appellant asserts that "[p]rior to the appointment of the guardians, [she] visited and cared for [Mr. McCrum] on a daily basis." *Id.*

Appellant's third issue is similar, in which she argues that the orphans' court denied her petition without "any evidence" that Mr. McCrum desired to remove her from his life. *Id.* at 26. Appellant asserts that the orphans' court erred because Mr. McCrum never sought a divorce or otherwise expressed a desire to remove Appellant from his life. *Id.* Appellant contends that by terminating her visits with Mr. McCrum, Appellees have obstructed her marriage resulting in a constructive divorce. *Id.* at 24, 27. Appellant argues that there is a lack of evidence supporting the orphans' court's finding that prohibiting contact with her husband is in his best interest, nor has Mr. McCrum expressed the preference to terminate contact with Appellant. *Id.* at 26, 28.

Attorney Ghaner, counsel for Mr. McCrum, responded to Appellant's petition as the Appellee in this matter[9] and asserted that he is unable to discuss this matter intelligently with his client to determine his preference because Mr. McCrum cannot effectively communicate due to his impairment and incapacity. Appellee's Brief at 2-3. Further, Attorney Ghaner argues that the orphans' court's order that approved plenary co-guardians' action of

_____

[9] The plenary co-guardians did not file briefs in this appeal.

maintaining Ms. McCrum on the no-visitation list, which prohibits Appellant from visiting or calling Mr. McCrum at the facility is sufficiently supported by the evidence in this case. *Id.* at 2. Attorney Ghaner further contends that our non-precedential decision, *In re Sabatino*, 2016 WL 6995384 (Pa. Super. Nov. 30, 2016) (unpublished mem.), permits counsel to respond on an incapacitated person's behalf when they are unable to communicate because of impairment pursuant to Pennsylvania Rule of Professional Conduct 1.14 and 20 Pa.C.S. § 5502.[10] *Id.* at 2-3.

_____

[10] Pa.R.A.P. 126(b), amended effective, May 1, 2019, provides that non-precedential decisions, referring to unpublished, memorandum decisions of the Superior Court filed **after May 1, 2019**, may be cited for their persuasive value. The Superior Court Operating Procedure 65.37, provides that unpublished memorandum decisions filed **prior** to May 2, 2019, shall not be relied on or cited by a court or party except in certain circumstances. *In re Sabatino* was filed by this Court on November 30, 2016, and cannot serve as persuasive legal authority. *See generally Coleman v. Wyeth Pharm., Inc.*, 6 A.3d 502, 522 n.11 (Pa. Super. 2010) (stating that "[a]n unpublished Superior Court memorandum decision [filed before May 2, 2019] shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding" (citation omitted)).

Although Attorney Ghaner cited a pre-May 2, 2019 unpublished memorandum, the brief's citation to Rule 1.14 of the Pennsylvania Rules of Professional Conduct and 20 Pa.C.S. § 5502, provide reliable legal authority.

Rule 1.14 governs an attorney's representation of a client with diminished capacity.

In response, Appellant argued that the record lacked competent evidence of Mr. McCrum's expressed preferences aside from the assertion of Attorney Ghaner. Appellant's Reply Brief at 5-6. Appellant further argues that Attorney Ghaner did not take adequate steps to discern the preferences of Mr. McCrum. *Id.* at 6.

Significantly, in addition to the testimony above, Attorney Ghaner stated that his client's dementia is very advanced and he is not able to communicate.

---

**Rule 1.14. Client with Diminished Capacity**

(a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

Pa.R.P.C. 1.14(a).

Further, the purpose of Pennsylvania's Decedents, Estates and Fiduciaries Code is set forth in Section 5502.

**§ 5502 Purpose of chapter**

Recognizing that every individual has unique needs and differing abilities, it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them, which assists these persons in meeting the essential requirements for their physical health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S. § 5502.

*See* N.T., 5/13/19, at 112. He also informed the court that Mr. McCrum does not recall Appellant or his children by name and gives the name of his first wife when asked to whom he is married. *See id.* Attorney Ghaner further stated that he met with Mr. McCrum twice in February of 2019, after the no-visitation directive was established, and Mr. McCrum was not able to communicate his preferences to counsel. *See* N.T., 3/11/19, at 34-35.

The powers, duties, and liabilities of guardians of the person and estate are described in 20 Pa.C.S. § 5521.

**§ 5521. Provisions concerning powers, duties and liabilities**

**(a) Duty of guardian of the person.—**It shall be the duty of the guardian of the person to assert the rights and best interests of the incapacitated person. Expressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent. Where appropriate, the guardian shall assure and participate in the development of a plan of supportive services to meet the person's needs which explains how services will be obtained. The guardian shall also encourage the incapacitated person to participate to the maximum extent of his abilities in all decisions which affect him, to act on his own behalf whenever he is able to do so and to develop or regain, to the maximum extent possible, his capacity to manage his personal affairs.

\* \* \*

**(d) Powers and duties only granted by court.—**Unless specifically included in the guardianship order after specific findings of fact or otherwise ordered after a subsequent hearing with specific findings of fact, a guardian or emergency guardian shall not have the power and duty to:

\* \* \*

(2) Prohibit the marriage or consent to the divorce of the incapacitated person.

20 Pa.C.S. § 5521(a), (d)(2).

Instantly, during the May 13, 2019 hearing, the orphans' court admitted into evidence the letter from Dr. Rifkah, Mr. McCrum's primary physician. **See** N.T., 5/13/19, at 28. The letter, which was prepared for the March 11, 2019 incapacity hearing, included a full list of Mr. McCrum's diagnoses. Although Dr. Rifkah's letter did not address the issue of contact between Mr. McCrum and Appellant, the orphans' court credited the testimony of Ms. Mary Beth Swan, who indicated that due to Mr. McCrum's dementia, Appellant's contentious behavior was adverse to her husband's well-being. **See id.** at 23; **see also Leipold**, 208 A.3d at 510. In finding Ms. Swan's testimony persuasive, the orphans' court considered her thirty-nine years of experience in elder care and particularized training in dementia. **See** N.T., 5/13/19, at 13, 22; **see also Leipold**, 208 A.3d at 510.

Further, the orphans' court credited Ms. Swan's informed opinion that it was in Mr. McCrum's best interest to prohibit contact between him and Appellant. **See** N.T., 5/13/19, at 21-22; **see also Leipold**, 208 A.3d at 510. The orphans' court also considered the testimony by Ms. Harnish that she witnessed Mr. McCrum becoming very upset over the course of his January 23, 2019 phone call with Appellant. **See** N.T., 5/13/19, at 39; **see also Leipold**, 208 A.3d at 510.

We conclude that the orphan's court did not abuse its discretion in its order approving plenary co-guardians' placement of Mrs. McCrum on the no-visitation list. The court's findings were amply supported by competent evidence that the plenary co-guardians acted in the best interest of Mr.

McCrum, who was adjudicated totally incapacitated and could not communicate his preferences in this matter. ***See Peery***, 727 A.2d at 540. The orphans' court's order, which evidenced its legitimate concern for Mr. McCrum's care and well-being, was supported by the record with extensive medical and lay witness testimony at the review hearing discussed above, including the fact that Appellant removed Mr. McCrum from the facility three times without authorization.

Our review of the record indicates that the orphans' court was concerned and did consider that Appellant is married to Mr. McCrum in its difficult decision to affirm her placement on the no-visitation list, and we share this concern. Even if the facility maintains a written no-visitation list, the verbal directive to Appellant that terminated contact with her husband until further notice has not been memorialized in writing to define the process by which Appellant could resume contact with him, including supervised visits and phone calls.

However, Appellant is not without recourse, and she may request that the plenary co-guardians remove her from the no-visitation list, which would reasonably require Appellant to follow the rules and regulations of the facility. Further, Appellant may petition the orphans' court for a review hearing if she believes that the guardians failed to perform their duties in accordance with the law or failed to act in the best interest of Mr. McCrum, pursuant to Section 5512.2, if her request to be removed from the no-visitation list is denied. ***See Loeffelbein***, 205 A.3d at 1222 n.16.

Accordingly, for the reasons herein, we affirm the orphans' court's order.

Order affirmed.

Judge Dubow concurs in the result.

Judge Colins files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/30/2020