J-S38034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF GERALDINE M. PRICE, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DARLENE PRICE AND KIM PRICE | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1501 EDA 2022 |

Appeal from the Order Entered May 5, 2022
In the Court of Common Pleas of Montgomery County,
Orphans' Court at No(s):  2018-X4250

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 5, 2023**

Darlene Price and Kim Price ("Price Sisters") appeal the order entered by the orphans' court distributing the Estate of Geraldine M. Price equally, one-third each, between the two Price Sisters and their brother, Alison Price ("Mr. Price"), the three beneficiaries.  Upon review, we vacate the order and remand for modification of the order of distribution in accordance with this memorandum.

The orphans' court set forth the facts and relevant procedural history as follows:

> This long-standing estate fight began in November of 2018, two months after Geraldine Price died, with a typical filing of a Petition for Grant of Letters Administration by [Mr. Price] seeking to be named as administrator of the estate of his widowed mother who died intestate.  The decedent's three children, [the Price Sisters and Mr. Price], were all named as co-administrators and were listed on the petition as Ms. Price's sole heirs.

***

On December 21, 2021, during a hearing before the Hon. Gail Weilheimer of this [c]ourt, the parties reached a settlement agreement which she placed on the record. The agreement related to, in relevant part, the sale of a property located at 1460 Doris Road in Abington, Montgomery County, Pennsylvania (the "Property"). [This agreement and the court's] December 27, 2021 Order resolved five different petitions then before [it], including [its] dismissal of the petition seeking to evict [Mr. Price] from the Property, and also permitting and requiring the sale of the Property to [Mr. Price's] girlfriend within 60 days without further [c]ourt approval, after which it would go to public sale.

On February 21, 2022, [Mr. Price] requested a brief extension for sale of the Property . . . [which] was granted by the [orphan's court] with sale to be completed no later than February 24, 2022. Sale of the Property took place on February 24, 2022 as ordered, at which point the instant argument between the parties escalated, as (despite the existence of their settlement agreement) they were unable to reach consensus on how the proceeds of the sale (the "Proceeds") should be distributed. On the following day, [Mr. Price] filed his Petition to Open an Estate Account and Stay Distribution of Estate Proceeds Pending Final Accounting. [The Price Sisters] responded on March 1, 2022, agreeing to the opening of an estate account but at the same time seeking the removal of [Mr. Price] as Co-Administrator of Ms. Price's estate as well as sanctions against Mr. Price for delay and for causing [the Price Sisters] to incur additional legal fees.

The [orphans' court] heard testimony from the parties on March 21, 2022, at the conclusion of which the parties were ordered to immediately open an estate account for the deposit of the [P]roceeds of the sale of the Property and to provide briefs to the [c]ourt setting forth how they thought the $72,919.88 being deposited in the account should be disbursed . . . . After careful consideration of the submissions of each party as well as the record, our May 5, 2022 order was issued, stating "we find that the parties are so close in their proposed resolution of this matter that an equitable solution which will avoid the need for further litigation and additional counsel fees is appropriate" and ordering the distribution of the $ 72,919.88 in the estate account one-third each to [the Price Sisters] and [Mr. Price].

Trial Court Opinion, 7/5/22, at 1-3.

The Price Sisters filed this timely appeal. The Price Sisters and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.[1]

The Price Sisters raise the following issue for our review:

> Whether the trial court erred when it failed to enforce the terms of the court ordered settlement agreement dated December 21, 2021, among the co-administrators?

---

[1] The orphans' court asserts that the Price Sisters' appeal should be quashed or their failure to comply with Pennsylvania Rule of Appellate Procedure 1925(b). The court maintains that none of the 14 issues raised therein ascribed any error to its order. Instead, "some of the listed items are statements of fact, others are questions, some are incomprehensible, others relate to matters not before the [court] at the time of the hearing." Because it could not comprehend the specific issues to be raised on appeal and was precluded from analyzing them, the court asserts that the Price Sisters' appeal should be quashed. Trial Court Opinion, 7/5/22, at 8.

On appeal, the Price Sisters also raise the following issue in response: "Are the [Price Sisters] entitled to file a vague and overly broad Statement of the Issues to be Raised on Appeal under Pa.R.A.P. 1925(b) because the orphans' courts' order's reasoning was vague and not discernible from the record? Price Sisters' Brief at 4. Because they could not discern the court's rationale for its May 5, 2022, order, the Price Sisters claim they could not state their issues with the requisite specificity. Therefore, their appeal should not be quashed. Price Sisters' Brief at 14.

A Rule 1925(b) statement is an important component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal. *Riley v. Foley*, 783 A.2d 807, 813 (Pa. Super. 2001). As such, the Rule 1925(b) statement must be sufficiently "concise" and "coherent" so that the trial court can identify the issues to be raised on appeal. "A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001).

Here, although poorly written, the Price Sisters' Rule 1925(b) statement encompasses the issue they challenge on appeal. Additionally, the issue is relatively straightforward, and the orphans' court was able to address it to some degree in its 1925(a) opinion. We therefore decline to find waiver.

Price Sisters' Brief at 4.

On appeal, the Price Sisters claim that the trial court failed to follow the settlement agreement entered among the three beneficiaries when it distributed the money in the Estate account. Specifically, they maintain that the agreement required Mr. Price to pay rent to the Estate for his use of the Property; this amount was then to be offset by certain payments Mr. Price made to maintain the Property. After that offset, the Price Sisters argue Mr. Price still owed the Estate $31,0128.94, but he never paid any of it to the Estate. The Price Sisters further maintain that Mr. Price is not entitled to share in the rent proceeds as he claims; "there is no clause in the agreement that states [Mr. Price] gets a part of the rent payment he owes." Price Sisters' Brief at 21. As such, they contend that the orphans' court erred when it distributed 1/3 of the Proceeds from the sale of the Property to Mr. Price. Instead, according to the Price Sisters, the court should have distributed the estate funds equally between them, being $36,459.94. Price Sister's Brief at 19-21.

"Our standard of review of an orphans' court's decision is deferential." *In re Estate of Strahsmeier*, 54 A.3d 359, 362 (Pa. Super. 2012). When reviewing an orphans' court decree, this Court must determine whether the record is free from legal error and whether the orphans' court's findings are supported by the record. *Id.* at 362–63. Because the orphans' court sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of

discretion. *Id.* at 363. However, this Court is not bound to give the same deference to the orphans' court conclusions of law. *Id.* (quotation marks and citation omitted). Where the rules of law on which the orphans' court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree. *Id.* (quotation marks and citation omitted). Moreover, we point out that an abuse of discretion is not merely an error of judgment. However, if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion has been abused. *Id.* (citation omitted).

In estate matters, family settlement agreements are favored because they are an attempt to avoid potentially divisive litigation. The existence of such agreement must be shown by clear and unambiguous evidence; the agreement must be binding on all parties. *In re Estate of Brojack*, 467 A.2d 1175, 1179 (Pa. Super. 1983). Where a fair and valid agreement is present it will be upheld whenever possible; in the absence of fraud the agreement is binding even if based on an error of law. *Id.*

Here, there is no dispute as to whether there was an agreement or its terms. The agreement made between the Price Sisters and Mr. Price on December 22, 2021, was placed on the record in open court. All parties agreed to its terms knowingly and voluntarily when questioned by the court. Notably, despite the controversy that exists over this Estate, the parties'

agreement is relatively simple and straightforward. In relevant part, it provides:

> Now, as it relates to the Abington property located at 1460 Doris Road in Abington, Pennsylvania, Allison Price has been residing in the property since the owner Geraldine Price died in September of 2018. There is an agreement between the parties that Allison Price is obligated to pay rent in the amount of $2,450 a month from September 2018 to the present. The amount of money that is owed for the 39 months from September of 2018 to the present is $95,550.
>
> Mr. Price will continue to pay the monthly rent of $2,450 for the remainder of the time that he resides at this property, until such time as the property is purchased.
>
> The parties recognize that Mr. Price has been paying the mortgage in the approximate amount of $3,250. But Mr. Price's mortgage payments, which until such time as it will be documented by his attorney Mr. Tall, will be reduced from the rent that he owes to the estate.
>
> Mr. Price has also made payments to the Bankruptcy Court. The property was included in Allison Price's bankruptcy filing; and there have been Bankruptcy Court payments made at this point in the amount of $23,124.22, that there may be more owed; and that Mr. Price will also be credited the amount paid to Bankruptcy Court to preserve the property from the total amount of rent owed.
>
> There will be an estate bank account established. And ***any balance owed from the total amount of rent owed by Mr. Price after deducting mortgage payments and payments to the Bankruptcy Court will be paid to the estate account.***
>
> If there is a credit owed to Mr. Price, he will be paid the credit from the estate after the sale of the Abington property. It may be that there is nothing owed after all the numbers are reconciled. That is regarding the rent of the Abington property.

N.T., 12/21/21, at 3-4 (emphasis added).

Additionally, the relevant numbers involved are undisputed. They are as follows:

Total amount of rent owed by Mr. Price: $ 100,450.00

Proceeds from sale of Property: $ 72,919.88

Payments made by Mr. Price: $ 69,421.06[2]

Trial Court Opinion, 7/5/22, at 5.

The parties, however, cannot agree how these numbers should be applied to the agreement and how any remaining proceeds in the Estate should be distributed. The Price Sisters claim that Mr. Price is not entitled to any portion of the rent because "there was nothing in the agreement that said he gets a part of the payment [rent] he owes." Conversely, Mr. Price claims that he is entitled a credit of 1/3 of the rent he paid. The orphans' court explained its understanding of the controversy:

> what the parties could not agree upon was whether [Mr. Price] was due a credit of $ 33,483.33 against the full $ 100,450 for his one-third share he would receive as a beneficiary of the estate or how the remaining proceeds should be distributed. [Mr. Price's] counsel simply added up all the credits due Mr. Price including the one-third fair rental value credit but stopped there. [The Price Sisters'] counsel totaled the credits for the mortgage and Bankruptcy Court payments and subtracted them from the rent owed, coming up with a lump sum owed by [Mr. Price] to the estate [$29,510.94]. He did not take the next step of giving [Mr.

---

[2] According to the agreement, Mr. Price was to provide total mortgage payments he made, being $46,296.84. That amount plus the amount he paid to the bankruptcy court, $23,124.22, total $69,421.06. This total amount of payments differs slightly from that contained in Mr. Price's brief by $1,500. Because the orphans' court adopted individual numbers, we apply them to our calculation herein.

Price] a credit for one-third of the rent paid to the estate. Nor did either side agree that each of the siblings [was] entitled to one third of any proceeds remaining in the estate account following completion of these calculations.

*Id.* It appears that, in deciding these issues for the parties, the orphans' court offset the 1/3 credit claimed by Mr. Price against the remaining rent owed to the Estate claimed by the Price Sisters'. While this was not an exact offset, the court concluded the parties were "close enough." It then equitably distributed the remaining amount from the sale of the Property evenly between the siblings. *Id.* at 10.

Based upon our review, we disagree with the parties' claims regarding the treatment of the rent. Additionally, we find that the orphans' court failed to adhere to the terms of the parties' agreement and erred when it calculated the numbers.

Importantly, according to the agreement, Mr. Price was obligated to pay rent to the **estate**. In relevant part, the agreement provided:

> And any balance owed from the total amount of rent owed by Mr. Price after deducting mortgage payments and payments to the Bankruptcy Court will be paid to the estate account.

N.T., 12/21/21, at 3-4. This is confirmed further by the court's colloquy of one of the parties on December 21, 2021:

> THE COURT: Was he able to answer any questions that you have? Let me ask it this way. Do you have any outstanding questions at this time that were not answered by your attorney or the Court during the negotiations?
>
> MS. DARLENE PRICE: Yes.
>
> THE COURT: Okay, what is that?

- 8 -

MS. DARLENE PRICE: Okay. I want to know if from this moment forward the rent will be paid into an account?

THE COURT: Yes. The rent, if I didn't say that, that is what we discussed initially, but there will be an estate account opened and rent will be paid into the account, yes.

MS. DARLENE PRICE: That is every month?

THE COURT: Yes.

MS. DARLENE PRICE: I think the other part was they have 60 days clear and solid. And everything that is paid to the mortgage company and to the bankruptcy, there has to be paperwork, legal paperwork set forward in front of us when everything is being decided?

\*\*\*

THE COURT: When it comes to the rent payment, it will be monthly from this point forward.

MS. DARLENE PRICE: Right.

THE COURT: So we are at the end of December. So from January into the estate account that will be established.

MS. DARLENE PRICE: Right.

THE COURT: What we discussed initially is that Allison will open the estate account.

MS. DARLENE PRICE: Hmm-hmm.

THE COURT: And he will provide proof of that to his attorney. And his attorney will share that with Mr. Miller so you know what account that is and it will be clear to what monies were deposited. When it comes to how much has been paid to the mortgage company, Mr. Tall will get that from the mortgage company and you will have a printout exactly what is paid and that is what you will reconcile.

N.T., 12/21/21, at 11-12. Thus, it is evident that the rent was to go to the

Estate and not the Price Sisters.[3]

Similarly, Mr. Price is not entitled to a credit for 1/3 of the rent. This is not to say however that Mr. Price will not receive his fair share of any rent left in the Estate account. Because Mr. Price is a beneficiary of the ***estate***, he is entitled to a portion of the rent, just as his sisters are upon distribution.

Turning to the application of the numbers to the parties' agreement, we observe that, after deducting what Mr. Price paid on behalf of the Estate from the rent he owed, $100,450 less $69,421.06, Mr. Price still owed $31,028.94 to the Estate for rent. Mr. Price should have deposited this amount into the Estate account as required by the parties' agreement. And, although he did not actually do so, this amount must still be included as an Estate asset subject to final distribution. Thus, adding this amount to the Proceeds of $72,919.88 from the sale of the Property that was deposited into the Estate account, the balance of the estate value should total $103,948.82.

This however is not the amount that the orphans' court distributed. Instead, the court only distributed the proceeds from the sale of the Property, splitting it evenly among the beneficiaries so that each would receive $24,306.63. By contrast, had the court included the amount of rent Mr. Price still owed to the Estate and divided $102,430.82 equally between the three siblings, including Mr. Price, each would be entitled to $34,649.61. The

---

[3] We further observe that the amount of rent, $2,450, was a fair market rental value determined by an appraiser. This amount was not discounted up front in exchange for the portion Mr. Price would receive once the Estate was distributed.

difference between what the parties are receiving under the orphans' court's order versus what they should receive is $10,342.98. While this is not a significant sum, it is also not "so close" as the orphans' court opined. Moreover, Mr. Price is entitled to much less than the $24,306.63 account for the unpaid rent he owed the estate. Instead of $24,306.63, Mr. Price is entitled to $34,649.61 minus the unpaid rent of $31,028.94 for a net amount of $3,620.66.

In sum, the trial court did not err in distributing 1/3 of the Estate to each of the beneficiaries as such distribution was within its equitable powers. However, the orphans' court erred in failing to adhere to the parties' agreement, and by not including the amount of rent Mr. Price still owed to the Estate in the total amount it distributed. The total value of the Estate was $102,430.82. Because Mr. Price never paid the rent he still owed into the Estate account, he is not entitled to receive his full 1/3 distribution from the proceeds held in the Estate account. Accordingly, Darlene Price and Kim Price shall each receive $34,649.61 from the Estate account. Mr. Price shall receive $3,620.66, which is his 1/3 share minus the amount of rent he did not pay the Estate. We vacate the order distributing the $72,919.88 in the estate account equally between the parties and remand with instructions to the orphans' court to modify its decree in accordance with this memorandum.

Order vacated and remanded with instructions. Jurisdiction relinquished

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/05/2023